Sam **SERIO**, d/b/a **Magnolia Canning Company**, Appellant,

v.

**BADGER MUTUAL INSURANCE COMPANY and Northwestern Mutual Fire Association**, Appellees.

No. 17358.

United States Court of Appeals Fifth Circuit.

May 5, 1959.

Rehearing Denied June 4, 1959.

P. Z. Jones, Ross R. Barnett, Jackson, Miss., O. W. Phillips, Magnolia, Miss., M. B. Montgomery, Jackson, Miss., Barnett, Jones & Montgomery, Jackson, Miss., of counsel, for appellant.

Thomas H. Watkins, Elizabeth Grayson, Jackson, Miss., Watkins & Eager, Jackson, Miss., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

JONES, Circuit Judge.

Among other business ventures the appellant, Sam Serio, had operated a canning factory at Magnolia, Mississippi, since 1939, under the name of Magnolia

Canning Co. The operation was seasonal, beans being canned in the spring and sweet potatoes in the fall. On June 11, 1939, Badger Mutual Insurance Company, one of the appellees, issued to the appellant a policy of fire insurance on the canned vegetables, materials and supplies in the canning plant in the amount of $35,000. On July 18, 1955, Northwestern Mutual Fire Association, the other appellee, issued a policy against the same risks in the amount of $25,000. The Badger policy incorporated a reporting form requiring the insured to make monthly reports. The Badger policy and the Northwestern policy each contained an Iron Safe Clause which provided, among other things,[1] that inventories would be taken at annual or more frequent intervals and a set of books would be kept showing the business transacted. The clause required that the inventory and books be kept in a locked fire-proof safe at night and at all times when the building was not open for business, or that the inventories and books be kept in some place which would not expose the records to a fire which might destroy the building in which the insured goods were kept.

The canning factory of Serio was destroyed by fire on the night of September 24, 1955. As permitted by the policies, the insurance companies examined the insured, Sam Serio, and his bookkeeper, Miss Fannie Lederer, under oath. From these examinations it appeared that the safe contained but one inventory, rather than the two that should have been produced, and contained no books. It was said by Miss Lederer that she had inadvertently left other inventories and the books out of the safe before the fire. It was assumed that they had been destroyed in the fire.

The insurance companies filed suit seeking a declaratory judgment that the Iron Safe Clause in the policies had been violated and that they owed nothing to Serio on account of his fire loss. Serio counterclaimed for the full amount of each policy. At the conclusion of the evidence both Serio and the insurance companies moved for a directed verdict. At the argument on these motions the trial judge said, among other things, " * * * it will suffice to say here that those books were not kept by Mr. Serio in the iron safe and were destroyed * * *. But in these insurance policies, it is a contract, and the contract requires that that be complied with, and unless it is waived, then it must be complied with to the extent that those books and records will substantially show the amount of the loss at the time of the fire. They have not been able to be produced and have never at any time been produced because they were destroyed by fire. So, there was no compliance." The court directed a verdict for the insurance companies. On September 13, 1957, a judgment for the insurance companies was entered. The foregoing excerpts from the court's oral opinion indicate that the judgment was entered upon the sole ground that Serio had not complied with the Iron Safe Clause. Motions for a judgment notwithstanding the verdict and, in the alternative, for a new trial, were filed. These were overruled and in a letter opinion the district court again

1. "1. The insured will take a complete itemized inventory of stock on hand at least once in each calendar year. * * *.
"2. The insured will keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.
"3. The insured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire proof safe at night, and at all times, when the building mentioned in this policy is not actually open for business; or, failing in this, the insured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.
"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

stated its conclusion that the Iron Safe Clause had been breached with the result of invalidating the policies. A notice of appeal from the judgment was filed March 11, 1958. In specifying error Serio asserts that there was a substantial compliance with the Iron Safe Clause, that the contents of the building and the value thereof could be established by other evidence.

On April 2, 1958, after the notice of appeal had been filed but before the transcript of the record in this appeal had been prepared, Serio filed a motion in the district court under Rule 60(b) (1, 2).[2] In the motion and affidavits filed with it were recitals that a few days before the fire while working on the books Miss Lederer, Serio's bookkeeper, received a message calling her to the bedside of her sister who was seriously ill in Wisconsin. In her excitement she left the books on the top of a cabinet. During her absence Serio told Glen Varnado, an illiterate employee, to move some old unused record books from the office to a storage room which was back of the boiler room of the canning factory. Varnado moved the unused books and also, without the knowledge of Serio, moved the books, records, inventory and cancelled checks of the canning factory. Not knowing the books and records had been moved out of the building, Serio and Miss Lederer assumed they had been destroyed in the fire. On March 14th, three days after the notice of appeal, Serio went to the store room looking for a usable ledger among the unused lot of books he had asked Varnado to move. The books, records, inventory and cancelled checks of the canning factory were then found with the unused books. The motion asked for a new trial at which the books and records could be offered in evidence. The court overruled the motion and in a letter opinion assigned its reasons for the ruling in this language:

"It was the duty of Serio to present these records within a reasonable time, which he failed to do. His excuse for the failure is not sufficient in law to comply with the terms of the policy. The documents were in the possession of Serio and his failure to produce them within a reasonable time was his own fault. It was his employee who misplaced the records and the negligence of this agent of his would be imputable to Serio. He failed to show due diligence in finding them. Under his own affidavit it should have occurred to him immediately, as a reasonably prudent person, that this employee of his had misplaced them and he should have searched the place at that time where he subsequently located them. I am therefore of the opinion that the showing for newly discovered evidence is insufficient."

From the order overruling the motion Serio has appealed. The case is before us on the appeal from the judgment and from the order overruling the motion filed under Rule 60(b)(1, 2).

■ This Court has jurisdiction of the appeal from the order denying the motion filed under Rule 60(b) notwithstanding the fact that the notice of appeal from the judgment on the merits had been filed prior to the filing of the motion. Ferrell v. Trailmobile, Inc., 5 Cir., 1955, 223 F.2d 697.

■■ The sole basis for the direction of verdicts and the entry of judgments

2. "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); * * *. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. * * * " Rule 60(b), Fed.Rules Civ.Proc. Title 28 U.S.C.A.

for the insurance companies was the failure of the insured Serio to comply with the Iron Safe Clause. The Rule 60(b) motion, filed less than seven months after the judgment, alleged that the books and records had been found and there had not been, in fact, any breach of the Iron Safe Clause. The sole basis for the denial of the motion was a failure of the insured to find and produce the records at an earlier time. No prejudice to the insurance companies is shown to have resulted from the delay in the discovery of the evidence. Under the circumstances the delay in the filing of the motion was not unreasonable. See Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266. The rule is to be liberally construed in order that judgments may reflect the true merits of a case. 3 Baron & Holtzoff, Federal Practice and Procedure, Rules Ed., 392, § 1322. It seems that Serio owned property, that the insurance companies for premiums paid by him, issued to Serio policies insuring him against the risk of loss or damage by fire, and that a fire destroyed or damaged all or a part of the insured property. He was deprived of the right to attempt to prove that he had sustained a loss within the terms of the policies, and the amount of his loss sustained, because of the Iron Safe Clause. That impediment, he asserts by his motion, is now removed. The district court was of the belief that it should have occurred to Serio that the books and records had been inadvertently (although fortuitously) moved by one employee after having been inadvertently left out of the safe by another employee. The district court held that a prudent person would have searched for the records at the place where they were subsequently found by accident. We do not agree. Serio asserts that he believed and we think he was entitled to believe that the records had been burned. So believing a prudent person would not have been expected to conduct a search.

The ends of justice require that a new trial be granted. Ferrell v. Trailmobile, Inc., supra. There is no occasion for our consideration of the specifications of error with respect to the judgment. It is improbable that the questions will recur on another trial. In order that there may be a new trial, the judgment is

Vacated and remanded.