OPALS ON ICE LINGERIE, Designs by Bernadette, Inc., Plaintiff,

v.

BODYLINES, INC., d/b/a Curves Defendant.

No. 04–CV–616 (ILG).

United States District Court, E.D. New York.

Nov. 12, 2004.

Jeffrey C. Slade, Esq., Slade & Associates, P.C., New York City, for Plaintiff.

Michael A. Haskel, Esq., Law Office of Michael A. Haskel, Mineola, NY, for Defendant.

### MEMORANDUM AND ORDER

GLASSER, District Judge.

Pending before the Court is the motion of defendant BodyLines, Inc., d/b/a Curves ("BodyLines" or "defendant") to dismiss the complaint of plaintiff Opals on Ice Lingerie, Designs by Bernadette, Inc. ("Opals" or "plaintiff") under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for a more definite statement under Fed.R.Civ.P. 12(e). In its complaint, plaintiff asserts a claim for equitable relief pursuant to Fed. R.Civ.P. 60(b) from this Court's March 2002 grant of summary judgment in favor of BodyLines with regard to the parties' obligation to arbitrate disputes. Additionally, plaintiff seeks to recover under New York unfair competition law, alleging that defendant misappropriated its designs for its line of women's lingerie products.

### FACTS

The factual background of the underlying litigation is explained in detail in this Court's March 5, 2002 order in *Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines, Inc., d/b/a Curves*, 2002 WL 718850 (E.D.N.Y. Mar. 5, 2002) (Glasser, J.) ("Opals I"), familiarity with which is

assumed. Briefly, and for the purpose of providing context to this order, the Court will sketch only the necessary background facts. Opals designs, manufactures and sells women's lingerie. BodyLines sells silicone breast enhancement inserts for women's undergarments, lingerie and other products. In 1997, the parties discussed the possibility of collaborating to produce and sell women's undergarments designed to hold the silicone enhancements marketed by BodyLines. In October of 1997, Opals faxed to BodyLines a two-page Non–Circumvention Agreement ("the 10/97 agreement"), which Bernadette Di Vito, the President of Opals, signed. Among other things, the agreement stated that the parties were obligated to arbitrate any disputes before the American Arbitration Association. On November 17, 1997, Julie Sautter, the President of BodyLines, signed the 10/97 agreement and faxed it to Opals. Compl. ¶ 20. The parties agree that Di Vito and Sautter both signed the 10/97 agreement. However, defendant contends that Sautter added language stating, "This Agreement is subject to the attached Amendment" and attached a one-page addendum. Def. Mem. at 3. Plaintiff alleges that it never saw either the amending language or the addendum. Compl. ¶ 21. The parties also exchanged drafts of another agreement, a three-page Non–Circumvention Agreement (the "Karnick Agreement"), crafted by Irwin Karnick, president of a catalog firm and the person who introduced the parties.

In late 1997, after the parties exchanged various draft agreements, BodyLines requested and Opals sent samples of Opals's products. Opals allegedly sent the samples in reliance on the 10/97 agreement and oral and written assurances by Body-Lines that it respected Opals's property in the designs. Compl. ¶ 25. Opals continued to send samples of its designs to Body-Lines in 1998. Compl. ¶ 34. In the summer of 1998, BodyLines allegedly promised Opals that it would purchase Opals's products. Compl. ¶¶ 36–38. Although Body-Lines did not purchase any of its designs, Opals shared more samples with defendant in October of 1998. The parties then ceased attempts to do business together. Opals alleges that BodyLines misappropriated its designs for defendant's commercial gain, pointing to products in defendant's summer 1998, summer 1999 and winter 1999 catalogs that were substantially similar to plaintiff's designs. Compl. ¶ 46.

Opals commenced an action in this Court in July 1999 (Opals I) to compel BodyLines to arbitrate on the basis of the Karnick Agreement. At issue in that action was whether the Karnick Agreement had been signed by both parties, thereby binding BodyLines to arbitration. The parties agreed that Sautter's signature was "cut" and "pasted" onto the agreement and, thus, a forgery. *See Opals I*, 2002 WL 718850, at *3. In the absence of any agreement containing both parties' signatures, this Court granted summary judgment in favor of BodyLines on March 5, 2002 on the issue of arbitration. That judgment was entered on March 8, 2002. Opals appealed to the Second Circuit, which affirmed this Court's decision. *See Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Body Lines, Inc., d/b/a Curves*, 320 F.3d 362, 371 (2d Cir.2003). In its decision, the Second Circuit noted that "Opals has produced a *copy* of [the 10/97 agreement] which is signed by both Di Vito and Sautter, and contains no addendum or mention of any such addendum. BodyLines has produced a *copy* of th[at] document, signed by both parties with a note beneath Sautter's signature stating that the Agreement is subject to the 11/97 Addendum, which is attached. . . . *Neither side has produced an original of the document.*" *Id.* at 370–71 (emphasis added).

In this action plaintiff alleges that it never produced an original agreement because Di Vito reasonably believed the original fax had been destroyed pursuant to Opals's policy to make paper copies of thermal paper faxes, which tend to deteriorate quickly, and discard the thermal "originals." Pl. Opp. at 5. In June of 2003, Di Vito found the "original fax copy of the agreement, on thermal paper," dated November 17, 1997 in a hag under some boxes. Compl. ¶ 58. Opals claims that the original fax was the October 1997 agreement signed by BodyLines manifesting its agreement to arbitrate and sent to Opals. *See* Compl. ¶¶ 20–21; Pl. Opp. at 5; Di Vito Decl. ¶ 5.[1]

On the basis of this purported "newly discovered evidence," Opals commenced this action on February 11, 2004 seeking equitable relief from this Court's judgment under that portion of Rule 60(b) which provides that a court may "entertain an independent action to relieve a party from a judgment, order, or proceeding." In addition, plaintiff asserts a cause of action for unfair competition under New York common law based on BodyLines's alleged misappropriation of plaintiff's designs for various lingerie products. Defendant moves to dismiss both causes of action for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for a more definite statement under Fed.R.Civ.P. 12(e).[2]

### DISCUSSION

When deciding a motion to dismiss, the Court takes the facts as alleged in the complaint to be true, and must draw all reasonable inferences from those facts in favor of the plaintiff. *See Ortiz v. Cornetta,* 867 F.2d 146, 149 (2d Cir.1989). A court must not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [the plaintiff] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### I. *Equitable Relief From Judgment Pursuant to Rule 60(b)*

Plaintiff seeks relief from this Court's 2002 judgment under Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b) provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); ... The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken ... This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, ... or to set aside a judgment for fraud upon the court.

A party seeking to vacate a judgment in an independent action pursuant to Fed.R.Civ.P. 60(b) must show that permitting the judgment to stand would be a "grave miscarriage of justice." The Su-

---

1. Opals disputes that the original fax contains the "addendum" that BodyLines purportedly added. Compl. ¶ 21. Defendant argues that Opals removed its "addendum" clause. *See* Def. Mem. at 5 (referring to the "Altered Non–Circumvention Agreement").

2. Opals has withdrawn its Second Cause of Action regarding alleged violation of copyright laws based on its drawings, pictorials, and textual materials. *See* Pl. Opp. at 2. Plaintiff acknowledges that the items of clothing at issue here are "useful articles" and that therefore they are not protected by federal copyright laws. *See id.* at 13.

preme Court proclaimed this rigorous standard in *United States v. Beggerly,* 524 U.S. 38, 46, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998): "Independent actions must ... be reserved for those cases of injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata.... [Thus,] *an independent action should be available only to prevent a grave miscarriage of justice.*" (emphasis added). This demanding standard has historical roots in the equitable principles that traditionally applied to obtain relief from judgment, which survived the adoption of Rule 60(b). *See* Moore's Federal Practice § 60.82[4]. Thus, even before *Beggerly,* the Supreme Court stated: "In order to warrant the interposition of a court of equity to restrain the enforcement of a judgment at law, it is, of course, not sufficient for the defeated party to show that because of some newly discovered evidence ... he would probably have a better prospect of success on retrial of the action. He must show something to render it *manifestly unconscionable* for his successful adversary to enforce the judgment." *Pickford v. Talbott,* 225 U.S. 651, 658, 32 S.Ct. 687, 56 L.Ed. 1240 (1912) (emphasis added); *see also Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986) ("Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances."). The requirement that the underlying judgment be "manifestly unconscionable" "preserves a balance between serving the ends of justice and ensuring that litigation reaches an end within a finite period of time." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1144 (2d Cir.1994); *Kotlicky v. U.S. Fid. & Guar. Co.,* 817 F.2d 6, 9 (2d Cir.1987) ("In deciding a Rule 60(b) motion, a court must balance the policy in favor of bearing a litigant's claims on the merits against the policy in favor of finality.").

■ Defendant argues that plaintiff has failed to show any grave miscarriage of justice. *See* Def. Mem. at 7. Plaintiff acknowledges that the sort of relief it seeks is limited to grave miscarriages of justice under *Beggerly,* but then asserts that *Johnson Waste Materials v. Marshall,* 611 F.2d 593 (5th Cir.1980), is apposite in applying that demanding standard to this case. Pl. Opp. at 7. In that case, the Fifth Circuit never mentioned the "grave miscarriage of justice" standard. In fact, the Fifth Circuit applied the requirements for a motion made pursuant to Rule 60(b)(2), to which a less rigorous standard applies than that applicable to the equitable relief plaintiff seeks in this independent action. Relying on *Johnson Waste,* plaintiff contends that "a grave miscarriage of justice will occur if Opals is not allowed to have its day in court with respect to" the purported newly discovered evidence. Pl. Opp. at 8. That contention will not warrant the extraordinary relief that plaintiff seeks. This is clear in light of *Beggerly,* where the plaintiff asserted fraud upon the court, a more egregious insult to the judicial process than is newly discovered evidence. The Supreme Court held that no miscarriage of justice occurred where plaintiff merely alleged that the government "failed to thoroughly search its records and make full disclosure to the Court" during discovery. 524 U.S. at 47, 118 S.Ct. 1862. *A fortiori,* where Opals bases its argument for equitable relief entirely on alleged newly discovered evidence that was in its possession without any claim of fraud upon the court, it alleges no facts amounting to a grave miscarriage of justice, and has thus failed to meet *Beggerly's* demanding standard.

In addition to failing to establish any miscarriage of justice justifying such extraordinary equitable relief, Opals does not meet the prerequisites for equitable relief required of an independent action pursu-

ant to Rule 60(b) set forth in *Campaniello Imports, Ltd. v. Saporiti Italia*, 117 F.3d 655, 662 (2d Cir.1997), namely, that: (1) the plaintiff has no other available or adequate remedy; (2) that its own fault, neglect, or carelessness did not create the situation for which it seeks equitable relief; and (3) establishes a recognized ground such as fraud, accident or mistake for equitable relief. The district court has discretion to grant relief based on the Rule 60(b) independent action to vacate a judgment. *See id.* at 661; *Prunte v. The Walt Disney Co.*, 2000 WL 193122, at *1 (S.D.N.Y. Feb. 16, 2000).

### A. No other available remedy

First, a party seeking relief from a judgment must allege that it has no other available remedy. Plaintiff does not make any such allegation. Plaintiff merely alleges that "It is on the basis of this newly discovered evidence, which fills in the evidentiary gap found by the district court and by the Court of Appeals, that this action is brought to vacate the previous judgment and reopen the record in this matter." Compl. ¶ 18. Moreover, plaintiff asserts a cause of action for unfair competition based upon BodyLines's alleged misappropriations of Opals's designs. It is clear, then, that Opals has an adequate remedy at law. *See Campaniello*, 117 F.3d at 662 (noting movants have adequate remedies at law based on substantive claim in the complaint).[3]

---

3. Even if plaintiff does not have an available remedy at law in light of the Court's subsequent finding that plaintiff's cause of action for unfair competition is time-barred, plaintiff must satisfy all three prerequisites for obtaining equitable relief under Rule 60(b) and it has not.

4. For example, in its memorandum of law, defendant analyzes subsection 60(b)(6), a

### B. Absence of plaintiff's own fault or carelessness

Opals has not sufficiently alleged that its own fault or carelessness in handling the original fax did not create the situation under which it seeks relief from judgment. Defendant argues that Opals has to request the Court to set aside its earlier judgment because, due to its own carelessness, plaintiff "lost the document it now claims is dispositive of the case." Def. Reply Mem. at 4. In opposition, plaintiff alleges that it "was *not able* to discover the new evidence at any earlier time, having thought that it had been destroyed." Compl. ¶ 75 (emphasis added). It appears that plaintiff seeks extraordinary relief under the savings clause of Rule 60(b) in part because of its failure to locate the original fax within one year of the entry of judgment, which would have permitted it to make a motion for relief in the underlying litigation. *See Strategic Research Inst., Inc. v. Fabozzi*, 187 F.R.D. 507, 512 (S.D.N.Y.1999) (plaintiff's carelessness precluded it from seeking relief in a motion pursuant to Rule 60(b)(3)).

At this juncture, the Court notes that although Opals asserts that it seeks relief only under the savings clause of Rule 60(b) permitting "independent actions" in equity, *see* Pl. Opp. at 7, both parties discuss requirements under other provisions of the Rule.[4] Most significantly, the parties' arguments respond to the requirements for a motion for relief from judgment based on newly discovered evidence pursuant to

---

"catch-all" provision of the Rule. Opals does not submit its request for relief by motion as required for relief under subsections (b)(1)—(6); rather, it initiated an independent action. Indeed, Opals could not have succeeded on a motion under Rule 60(b)(2) because such a motion would be time-barred. *See* Rule 60(b)(2).

Rule 60(b)(2). No motion pursuant to Rule 60(b)(2) having been made, the Court is bound by the Second Circuit's decision in *Campaniello*, which set forth the requirements for equitable relief from judgment in an independent action. The Court notes, however, that courts of appeals in other circuits and at least one district court in this circuit have applied the requirements of Rule 60(b)(2) for newly discovered evidence to an independent action similar to the one here. *See, e.g., Griffin v. Fed. Deposit Ins. Corp.*, 831 F.2d 799, 802 (8th Cir.1987) ("Federal courts impose the same requirements for an independent action based on newly discovered evidence as is required in a Rule 60(b)(2) motion for relief from judgment."); *Johnson Waste Materials*, 611 F.2d at 597 (applying the requirements for a Rule 60(b)(2) motion to an independent action); *Carr v. D.C.*, 543 F.2d 917, 926–27 (D.C.Cir.1976) (noting that independent actions seeking relief from judgment based on newly discovered evidence are subject to the requirements of Rule 60(b)(2)); *Tufts v. Corp. of Lloyd's*, 981 F.Supp. 808, 812 (S.D.N.Y.1996) (applying Rule 60(b)(2) requirements to an independent action based on new evidence). Indeed, in its opposition papers, plaintiff cites *Johnson Waste* as the primary authority for the relief it seeks. Pl. Opp. at 7–8. Notably, in *Johnson*, the court held that independent actions seeking relief from judgments based on newly discovered evidence are "not less extraordinary than a Rule 60(b)(2) motion ... [and] may even be more so." 611 F.2d at 597.[5] Plaintiff acknowledges the heavy burden it bears. *See* Pl. Opp. at 7. Failing to meet the Second Circuit's test for independent actions under *Campaniello*, the plaintiff also fails to meet the requirements under Rule 60(b)(2).

In order to succeed on a motion pursuant to Rule 60(b)(2), a movant must show: "(1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding; (2) the movant must have been justifiably ignorant of them despite due diligence; (3) the evidence must be admissible and of such importance that it probably would have changed the outcome; (4) the evidence must not be merely cumulative or impeaching." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001). The Court's analysis centers on the due diligence requirement set forth in *Teamsters*, 247 F.3d at 392, because it is primarily with regard to that element that plaintiff's allegations fail. As a threshold matter, defendant argues that Opals cannot succeed under Rule 60(b) because it possessed the original thermal paper fax prior to judgment. Def. Mem. at 9. Courts hold that evidence in a party's possession during the litigation is not "newly discovered" evidence. *See, e.g., Atkinson v. Prudential Prop. Co., Inc.*, 43 F.3d 367, 371 n. 3 (8th Cir.1994) (noting it is highly unlikely that a letter in plaintiff's files could be considered "newly discovered evidence"); *Longden v. Sunderman*, 979 F.2d 1095, 1102–3 (5th Cir.1992) (agreement regarding attorneys fees was in movant's files before judgment was entered and thus was not "newly discovered evidence"); *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987) (evidence that formed basis of expert's report was in party's possession before judgment was entered). In this case, since Di Vito found the original fax in her office under boxes, the fax copy must have been in her office and therefore in plaintiff's possession prior to the 2002 judgment.

---

**5.** While not bound by the one-year limitations period for motions made pursuant to Rule 60(b)(2), a litigant in an independent action must nevertheless meet all the other requirements for vacating a judgment based on newly discovered evidence under that subsection.

That evidence in a party's possession cannot be considered "newly discovered" relates to the due diligence requirement under Rule 60(b)(2). Rule 60(b)(2) expressly permits relief from judgment only for newly discovered evidence "which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." *See also Schwartz v. Capital Liquidators, Inc.,* 984 F.2d 53 (2d Cir. 1993); *Westerly Elec. Corp. v. Walter Kidde & Co.,* 367 F.2d 269 (2d Cir.1966). Courts analyzing the requirement of due diligence do not accept feeble efforts to locate evidence. *See United States v. Potamkin Cadillac Corp.,* 697 F.2d 491, 493 (2d Cir.1983) (affidavit regarding filing of report was not "newly discovered evidence" where plaintiff made inadequate attempts to locate actual copy of report or proof of its filing); *Valmont Indus., Inc. v. Enresco, Inc.,* 446 F.2d 1193, 1195 (10th Cir.1971) (affirming denial of Rule 60(b)(2) motion with regard to due diligence requirement where an ordinary search of patents would have located the patent asserted to be "newly discovered evidence"); *Serio v. Badger Mut. Ins. Co.,* 266 F.2d 418 (5th Cir.1959). In this case, plaintiff does not allege any facts to suggest that Di Vito exercised due diligence in attempting to find the original fax. Opals merely alleges that Di Vito believed, based on routine business practices, that the document had been discarded. These allegations do not relieve plaintiff from the obligation of due diligence. Clearly, since the original fax of the 10/97 agreement allegedly survived plaintiff's document retention system, original papers are not discarded or destroyed in every instance. Indeed, maintaining a "careless filing system" does not excuse a party from the due diligence requirement of Rule 60(b)(2). *See Atkinson,* 43 F.3d at 372 n. 3 (suggesting that letter plaintiff failed to produce at trial, which he later discovered in his files, was unlikely to be "newly discovered" and

did not relieve plaintiff from due diligence requirement). Furthermore, the Seventh Circuit's decision in *United States v. McGaughey,* 977 F.2d 1067 (7th Cir.1992), compels the conclusion that Opals has not met the due diligence requirement. *McGaughey* concerned defendant's offer of compromise to the IRS on a Form 656, the original of which was destroyed pursuant to IRS procedure, in a suit by the government seeking a judgment against an individual for tax deficiencies. *Id.* at 1070. Fifteen days after the district court granted summary judgment for the government, defendant located a copy of Form 656 indicating his offer of compromise in his files. Defendant made a Rule 60(b)(2) motion to vacate the grant of summary judgment. Although defendant argued that he searched diligently for the form, and that it evaded discovery because it was located in files unrelated to its subject matter, the district court held that defendant failed to exercise due diligence. The Seventh Circuit affirmed noting, "given the importance of the document, one would have expected [defendant] to search all of his papers." *Id.* at 1075. In this case, the allegations in the complaint suggest that plaintiff views the rulings of this Court and the Second Circuit as confirming the importance of an original fax. For example, Opals alleges that this Court noted in its March 5, 2002 opinion that "Opals was unable to direct the Court's attention to any agreement which was signed by both Opals and BodyLines." Compl. ¶ 55. Plaintiff further alleges that the Court of Appeals denied its request to enforce any agreement to arbitrate with BodyLines "because [Di Vito] was unable to produce an original fax copy of the original agreement with BodyLines." *Id.* Despite this awareness, Di Vito, on behalf of plaintiff, did not locate the original fax until "early June 2003, [when she] was going through some boxes and came upon the original fax

copy of the agreement, on thermal paper...." Compl. ¶ 58. Given Di Vito's awareness of the significance of an original fax in the underlying litigation, she should have searched for the original, which she eventually located *in her office. Cf. Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 71 (2d Cir.1990) (in independent action, suggesting that plaintiff counsel's failure to attempt to determine whether other material documents were not produced constituted "fault, neglect or carelessness" on plaintiff's part).

Plaintiff's citation to *Serio v. Badger Mut. Ins. Co.*, 266 F.2d 418 (5th Cir.1959), does not bolster its argument that its failure to search for the original fax was excusable because Di Vito believed that the document was destroyed. In that case, defendant believed company books were destroyed in a fire that consumed the factory he operated. *Id.* at 419. After judgment was entered in a suit by his insurance company, defendant found the books, which defendant's employee had inadvertently moved out of the building. *Id.* at 420. On defendant's motion under Rule 60(b)(2) based on this newly discovered evidence, the court of appeals vacated the judgment of the district court for the plaintiff and held that a prudent person in defendant's position would not have searched for the books believing them to have been destroyed by the fire. *Id.* at 421. While Opals correctly construes the Fifth Circuit's holding in that case, *Serio* is inapplicable here. First, the facts of *Serio* are distinguishable in that it was reasonable for the defendant to believe a fire that destroyed its business also consumed any books kept by that business. By contrast, Opals's allegations that because its business usually discarded original thermal faxes, Di Vito believed the original to have been destroyed and never searched for it are unreasonable in light of the due diligence requirement expressly imposed by Rule 60(b)(2). More significantly, the rationale of *Serio* is inapplicable to this case because defendant there made a motion under Rule 60(b)(2) within one year of entry of judgment, whereas Opals seeks more extraordinary relief in this independent action brought almost two years after judgment was entered. Thus, even applying the Rule 60(b)(2) requirements, Opals's allegations are insufficient to show that its own fault or carelessness did not contribute to the extreme form of relief it now requests of the Court.[6]

---

**6.** In the absence of a showing by plaintiff that leaving this Court's 2002 judgment intact would result in a grave miscarriage of justice, some courts do not reach the requirement under Rule 60(b)(2) that the newly discovered evidence would change the outcome of the underlying litigation. *See Beggerly*, 524 U.S. at 47 n. 4, 118 S.Ct. 1862. Although the Second Circuit in this case made clear that without an agreement signed by both parties there was no meeting of the minds, the parties still dispute having both signed and consented to a single agreement. *See* Def. Mem. at 8 n. 4. In any event, Opals has not shown that the original fax would likely change the outcome of this Court's 2002 decision. *See Tufts*, 981 F.Supp. at 813. The facts of this case are analogous to *Atkinson*, 43 F.3d at 372, where plaintiff moved under Rule 60(b)(2) on the basis of a "newly discovered" draft of a letter plaintiff alleged entitled him to a real estate commission. The Eighth Circuit held that the letter would not have changed the outcome of the district court's gram of summary judgment against plaintiff because plaintiff's own actions suggested he did not view the agreement as a binding contract. The fact that plaintiff sent a proposed agreement to the author of the letter after receiving the letter suggested he did not view the letter as a binding agreement. Similarly, Opals signed the Karnick Agreement after it allegedly received the 10/97 agreement from BodyLines signed by Sautter. This suggests that Opals did not view the 10/97 agreement as a binding contract. Moreover, given the forgery of draft agreements acknowledged by the parties and by the Second Circuit, the Court cannot conclude that the original fax would change its earlier decision.

## C. Recognized ground for relief

■ Finally, a movant seeking relief from judgment under the independent action clause of Rule 60(b) must set forth a recognized ground for relief. Here, it is only the newly discovered evidence that forms the basis for the relief the plaintiff seeks. In most independent actions asserting newly discovered evidence, litigants allege that newly discovered evidence shows fraud on the court. *See Campaniello*, 117 F.3d at 663; *Madonna v. United States*, 878 F.2d 62, 64 (2d Cir. 1989); *Tufts*, 981 F.Supp. at 811. The disputes in those cases frequently arise from a party's complaints that its adversary fraudulently failed to disclose relevant evidence during the underlying litigation. *See Beggerly*, 524 U.S. at 46, 118 S.Ct. 1862 (claimant to land alleged that government deceptively failed to produce relevant evidence of land grant); *Cresswell*, 922 F.2d at 71 (plaintiff alleged that defendant fraudulently failed to produce documents). Plaintiff in this case does not allege that there was any fraud upon the Court. *See* Pl. Opp. at 8. It is uncertain based upon existing case law that the equitable relief under Rule 60(b) in independent actions is available for newly discovered evidence in the absence of allegations that the new evidence is indicative of fraud. In any event, plaintiff fails to meet the first two requirements of *Campaniello* and, thus, Opals fails to state a claim for equitable relief under Rule 60(b).[7]

## II. *Unfair Competition*

■ Defendant moves to dismiss Opals's third cause of action based on unfair competition for failure to state a claim upon which relief can be granted under Fed. R.Civ.P. 12(b)(6).[8] The "gravamen of a claim of unfair competition is the bad faith misappropriation of a commercial advantage belonging to another by infringement or dilution of a trademark or trade name or by exploitation of proprietary information or trade secrets." *Eagle Comtronics, Inc. v. Pico Prods., Inc.*, 256 A.D.2d 1202, 1203, 682 N.Y.S.2d 505 (N.Y.App.Div. 1998). *See also Roy Exp. Co. v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir.1982) ("An unfair competition claim involving misappropriation usually concerns

---

**7.** The Court's finding that Opals has failed to state a claim for equitable relief under Rule 60(b) disposes of the need to address defendant's arguments that plaintiff's action should be dismissed because of *res judicata* or any delay in its commencement. *See, e.g.,* on *res judicata*, *L–Tec Elec. Corp. v. Cougar Elec. Org.*, 198 F.3d 85 (2d Cir.1999). While the doctrine of laches does apply to independent actions, *see Simons v. United States*, 452 F.2d 1110, 1116 (2d Cir.1971), *Lockwood v. Bowles*, 46 F.R.D. 625, 629 (D.D.C.1969), the party asserting laches must show it has been prejudiced by the delay. *See Simons*, 452 F.2d at 1116; *Lockwood*, 46 F.R.D. at 629. BodyLines does not contend that it suffered any prejudice as a result of plaintiff's almost two-year delay in bringing this action, and, thus, the doctrine would be unavailable in any event.

**8.** In its memorandum of law, defendant discusses various claims which it asserts fall under plaintiff's unfair competition cause of action, including; federal trademark infringement (Def. Mem. at 14–17), trade dress violations under New York law (Def. Mem. at 17), breach of contract (Def. Mem. at 21–23), fraud (Def. Mem. at 23–26), and tortious interference (Def. Mem. at 26–27). Among other reasons, defendant challenges Opals's pleadings with regard to the unfair competition cause of action as vague. Because in its opposition papers, plaintiff delineated the narrow scope of its unfair competition claim, disputing that it even attempts to state a claim under those various legal theories defendant raises. *see* Pl. Opp. at 12, defendant withdrew its motion for a more definite statement. *See* Def. Mem. at 1 n. 1. The Court will address only plaintiff's claim for unfair competition based on allegations of misappropriation by defendant of plaintiff's designs. *See* Pl. Opp. at 11.

the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property."); *Capitol Records, Inc. v. Wings Digital Corp.*, 218 F.Supp.2d 280, 286 (E.D.N.Y.2002) (an unfair competition claim lies where a defendant "appropriates the skill, expenditures and labor of a plaintiff to gain a commercial advantage") (internal quotations omitted).

■ As a threshold matter, defendant contends that plaintiff's claim is time-barred. *See* Def. Mem. at 20. The parties agree that Opals's unfair competition claim is subject to a three-year statute of limitations period under New York law. *See* Pl. Opp. at 14; Def. Reply Mem. at 8. They disagree, however, whether the statute of limitations has run on Opals's claim for unfair competition. Opals's claim is based on allegations that BodyLines "misappropriated" Opals's property rights. *See* Compl. ¶¶ 48, 50, 85. According to the allegations in plaintiff's complaint, BodyLines committed the alleged unlawful acts in 1998 and 1999. Compl. ¶¶ 45, 46. Opals argues that the statute has not yet run because its misappropriation claim is based on BodyLines's interference with its design property, as opposed to total conversion of the property, and that a new cause of action accrues each time defendant interferes with plaintiff's property. Pl. Opp. at 14. Thus, according to plaintiff, BodyLines's uses of its designs within three years of the date on which the complaint was filed are actionable. *Id.* To the contrary, defendant asserts that because plaintiff's cause of action is based on total deprivation of plaintiff's property rights and sounds in conversion, it accrued when defendant first misappropriated plaintiff's designs and is time barred.

Claims for unfair competition are governed by N.Y. C.P.L.R. 214(4) regarding injury to property. *See Norbrook Lab. Ltd. v. G.C. Hanford Mfg. Co.*, 297 F.Supp.2d 463, 491 (N.D.N.Y.2003); *Capitol Records, Inc. v. Naxos of Am., Inc.*, 262 F.Supp.2d 204, 216 (S.D.N.Y.2003). Courts differ on when the three-year limitations period under N.Y. C.P.L.R. 214(4) accrues in this context. Indeed, there is an "incalculable variety of illegal practices falling within the unfair competition rubric" which depend "more upon the facts set forth ... than in most causes of action." *Roy Exp. Co.*, 672 F.2d at 1105 (internal quotations and citations omitted). Some courts hold that the cause of action accrues when defendant first misappropriated plaintiff's property. *See Mopex, Inc. v. Am. Stock Exch. LLC*, 2002 WL 342522, at *11 (S.D.N.Y. Mar. 5, 2002) (holding that three-year statute of limitations period accrued when third party to whom defendant disclosed plaintiff's trade secrets applied to the SEC for authority to trade on that information on behalf of defendant). Other courts hold that while a claim for unfair competition is not time-barred, damages are limited to the three-year period before the action was commenced. *See Ediciones Quiroga v. Fall River Music, Inc.*, 1995 WL 103842, at *8 (S.D.N.Y. Mar. 7, 1995).

In their briefs, the parties rely heavily on *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 462 N.Y.S.2d 413, 448 N.E.2d 1324 (N.Y.1983). In that case, plaintiff alleged that defendant unlawfully commercially exploited a master phonograph record that belonged to the plaintiff. *Id.* at 485–86, 462 N.Y.S.2d 413, 448 N.E.2d 1324. Plaintiff asserted a claim for unfair competition based on misappropriation of its property. With regard to when the plaintiff's cause of action accrued, the court distinguished unfair competition claims that sound in trespass from those that are based on conversion. It defined trespass as an "interference with a person's property" and characterized conversion as a "denial or violation of the plaintiff's dominion, rights,

or possession." *Id.* at 487, 462 N.Y.S.2d 413, 448 N.E.2d 1324 (citations omitted). The court cautioned that "the mere assertion of a continuing right, however, will not be sufficient to have the cause of action deemed a continuing trespass if the facts as pleaded indicate that the defendant's conduct, if proven, would constitute a taking of the property and a conversion of that property to his own." *Id.* at 487, 462 N.Y.S.2d 413, 448 N.E.2d 1324.

In *Sporn*, the court construed plaintiff's cause of action as one for conversion based on misappropriation, holding that plaintiff's allegations that "defendant ... has been using that master recording as his own by manufacturing, distributing and selling records and otherwise commercially exploiting that master recording which it is claimed is the property of the plaintiff" "amounted to more than mere interference." *Id.* at 488, 462 N.Y.S.2d 413, 448 N.E.2d 1324. Similarly, Opals alleges that BodyLines "misappropriated Opals's designs and products" based on the sample designs Opals provided to BodyLines. *See* Compl. ¶ 44. Specifically, BodyLines allegedly misappropriated Opals's "property rights in the creation of unique, original and valuable bra designs, property rights in the designs, models and sketches which Opals created by use of Ms. Di Vito's skill"; "Opals's exclusive property right to license the use of its unique and original designs"; and Opals's reputation by telling plaintiff's customers that defendant's designs were superior to Opals's. Compl. ¶ 48. Defendant allegedly committed those unlawful acts by its "unauthorized copying of Plaintiff's designs involving breach of [the] Non–Circumvention agreement and numerous written and oral promises of confidentiality and non-use of Plaintiff's designs" and by inducing Opals to share designs with defendant by falsely promising to purchase the designs. Compl. ¶ 85. Defendant's unlawful actions culminated in numerous products it designed, sold and manufactured that are "substantially similar" to those of Opals, *see* Compl. ¶ 46(a)—(r), which were "generally unavailable in the marketplace" during the time period in which Opals shared samples with BodyLines. Compl. ¶ 47. As in *Sporn*, these allegations of misappropriation amount to more than mere interference with Opals's designs and, as such, constitute a "taking" or conversion of plaintiff's property. *See Roy Exp. Co.*, 672 F.2d at 1105 (defining unfair competition based on misappropriation as a "taking"); *see also Allou Health & Beauty Care, Inc. v. Aetna Cas. & Sur. Co.*, 269 A.D.2d 478, 480, 703 N.Y.S.2d 253 (N.Y.App.Div.2000) (defining misappropriation as a "taking"). Accordingly, the three-year limitations period under 214(4) governing plaintiff's claim for unfair competition began to run in 1998, the point at which BodyLines misappropriated Opals's designs and manufactured and sold them as its own.[9] Since plaintiff commenced this action in February of 2004, its claim for unfair competition is time-barred. *See Mopex*, 2002 WL 342522, at *11 (dismissing plaintiff's unfair competition claim as time-barred); *Sporn*, 58 N.Y.2d at 489, 462 N.Y.S.2d 413, 448 N.E.2d 1324. Having found that the cause of action is untimely, the Court declines to reach the other bases on which defendant moves to dismiss plaintiff's claim.

## CONCLUSION

For the foregoing reasons, defendant BodyLines's motion to dismiss the com-

---

9. The Court notes that Opals's complaint is devoid of any allegations that BodyLines continues to interfere with Opals's designs or products so as to support Opals's contention that interferences within three years of the filing of the complaint are actionable.

plaint under Fed.R.Civ.P. 12(b)(6) is granted.

SO ORDERED.