# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 6, 2013          Decided May 13, 2014

No. 12-7061

RAYMONE K. BAIN AND DAVIS, BAIN & ASSOCIATES, INC.,
APPELLANTS

v.

MJJ PRODUCTIONS, INC. AND ESTATE OF MICHAEL JOSEPH
JACKSON,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-00826)

---

*Joseph M. Creed* argued the cause for appellants. With him
on the briefs were *Steven M. Pavsner* and *Levi S. Zaslow*.

*Henry W. Asbill* argued the cause for appellees. With him
on the briefs were *Jennifer Bradley Lichter*, *Howard L.
Weitzman*, and *Jeremiah T. Reynolds*. *Ryan J. Watson* entered
an appearance.

Before: BROWN and SRINIVASAN, *Circuit Judges*, and
WILLIAMS, *Senior Circuit Judge*.

SRINIVASAN, *Circuit Judge*:   In December 2003, the late entertainer Michael Jackson retained Davis, Bain & Associates, Inc., to act as his public relations firm.  One of the firm's founders, Raymone Bain, began serving as a spokesperson and publicist for Jackson, later becoming his general manager.  In May 2009, Ms. Bain and her firm (collectively, Bain) sued Jackson and his production company, MJJ Productions, Inc., claiming to be owed substantial sums for various services rendered.  Those services included arranging the release of a 25th anniversary edition of Jackson's album, *Thriller*, generally recognized to be the best-selling album in history.   The defendants (collectively, MJJ) moved to dismiss, relying principally on a December 2007 release agreement signed by Jackson and Bain.   In the release agreement, Bain broadly relinquished any claims against Jackson and his business entities.  The district court granted summary judgment in favor of MJJ, holding that the release agreement precluded Bain's claims.

Five months later, Bain moved for relief from judgment under Federal Rule of Civil Procedure 60(b)(2).  Rule 60(b)(2) allows for relief based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial."  The "newly discovered evidence" cited by Bain was an April 2008 letter from Jackson to Bain, in which Jackson stated that he had no awareness of, and had never signed, the release agreement on which the district court had grounded its grant of summary judgment.  The district court denied the Rule 60(b)(2) motion.  Because we find no abuse of discretion in the district court's ruling that Bain failed to exercise reasonable diligence in seeking out the April 2008 letter, we affirm.

3

**I.**

According to the complaint, in May 2006, Bain and Jackson entered into a Personal Services Agreement. The agreement authorized Bain to incorporate a new company (the Michael Jackson Company) on Jackson's behalf, and appointed her the new company's president and chief operating officer. As compensation, she would receive a "10% Finder's fee of any Agreement(s) entered into by Michael Jackson, or the Michael Jackson Company, generated by, or due to the direct efforts of Bain and/or Bain's contacts." J.A. 31. Bain alleged that she initiated a number of such projects, for which she claims to be owed compensation amounting to at least $44 million. Bain brought suit against MJJ in federal district court, invoking the court's diversity jurisdiction.

MJJ moved to dismiss the complaint based on a "Payment and Release Agreement" (the Release) signed by Bain in December 2007, which MJJ claimed absolved it of liability under the Personal Services Agreement. The Release provided that Jackson would render a payment to Bain in the amount of $488,820.05, as "full and final satisfaction of any [and] all monies, known or unknown, to be owed to you by the Jackson Parties with respect to any and all agreements whether verbal or written that you may have entered into with the Jackson Parties from the beginning of time until December 27, 2007." J.A. 104. One week after MJJ filed its motion to dismiss, Jackson unexpectedly died.

In opposing dismissal, Bain argued that the Release was defective due to fraud in the inducement, misrepresentation, and mistake. Bain also contended that the Release was facially ambiguous, permitting consideration of parol evidence to interpret the contract. Bain asserted that she intended to discharge claims for past debts and liabilities, not claims concerning future work or deals yet to be finalized. In addition,

Bain expressed doubt about the authenticity of Jackson's signature on the Release. Finally, she requested the opportunity to conduct discovery to support her challenges.

Because the defendants' motion to dismiss relied on matters outside the pleadings—namely, the Release—the district court converted the motion into one for summary judgment. The court granted both sides additional time to supplement the record with "all the material that is pertinent to the motion." J.A. 274-75. Bain's attorney filed an affidavit under Federal Rule of Civil Procedure 56(d), stating that, if permitted by the court, Bain would conduct discovery concerning Jackson's intent in the Release and the authenticity of his signature.

On May 7, 2010, the district court granted summary judgment in favor of the defendants, holding that the unambiguous language of the Release barred Bain's claims. *See Bain v. Jackson*, 783 F. Supp. 2d 13, 17 (D.D.C. 2010). The court rejected Bain's contentions that the Release was voidable due to fraud in the inducement or mistake. *Id.* at 17-18. The court also denied Bain's requests for discovery. *Id.* at 18 n.4. Bain did not appeal the district court's grant of summary judgment against her.

On October 4, 2010, Bain moved for relief from judgment based on "newly discovered evidence," pursuant to Rule 60(b)(2). The "newly discovered" evidence cited in support of the motion was an April 24, 2008, letter faxed from Jackson to Bain. The letter stated:

> I have never terminated your services nor did I null and void any of your Agreements. I know nothing about a release form. I neither authorized or signed the same. Therefore, I am authorizing you to continue to communicate with Mr. Yakoob regarding the Sultan's property in Las Vegas, and to continue your role as my

General Manager and President/COO of The Michael Jackson Company.

J.A. 414.

In an accompanying affidavit, Bain explained that she had received the letter "in connection with the work Mr. Jackson expected me to continue to perform on his behalf." Bain Aff. ¶ 4. Bain now says that the letter referenced "the Sultan's property" because, at the time, Jackson had been searching for a permanent residence and had expressed interest in a property owned by the Sultan of Brunei. When Jackson inquired about the property in early 2008, Bain raised the issue of the Release. Jackson responded with the April 2008 letter.

According to Bain's affidavit, an unnamed consultant who worked for the Michael Jackson Company had taken a collection of files from Bain's office, and those files included the April 24, 2008, letter. The consultant had been handling real estate matters for Jackson. When the consultant completed his responsibilities in 2008, he "boxed up the information regarding properties and took that information home with him, including the file on the Sultan of Brunei's property," which contained the April letter. Bain Aff. ¶ 4. The consultant returned the box of files to Bain in "late June, or early July, 2010," after Jackson's death, and after the district court's entry of summary judgment. *Id.*

Bain stated that she "did not know the April 24, 2008, letter was in this box, or that it was in the Sultan of Brunei's file," and she did not examine the contents of the box until late August 2010. *Id.* ¶ 5. When she opened the Sultan's file, she discovered the letter, which "had been misfiled . . . in a file labeled, 'The Sultan of Brunei Finance.'" *Id.* She further stated:

Not in my wildest imagination did I suspect that a box containing documents relating to real properties would contain any material relating to my relationship or employment with Mr. Jackson before this Court. I knew I had correspondence from Mr. Jackson, but I could not find it. I made a diligent search of all the records and files in my office. I did not know, nor was I able to look in the Sultan of Brunei's file, which was in the possession of the consultant. I looked for this file for months, spending many, many hours looking into all of the files which were in my office, but it was no where [sic] to be found.

*Id.*

On June 7, 2012, the district court denied Bain's Rule 60(b)(2) motion. *Bain v. Jackson*, No. 09-826, Mem. Op. & Order (D.D.C. June 7, 2012). The court based its denial on two independent grounds. First, the court held that, because Bain knew about Jackson's April 2008 letter at the time of trial, the letter could not be considered "newly discovered" evidence within the meaning of Rule 60(b)(2). *Id.* at 4. Second, the court held that Bain failed to exercise "due diligence" in attempting to discover the letter. *Id.* at 4-5. The court explained that Bain made no reference to the letter in any filings, and thus "cannot be said to have conducted due diligence in attempting to procure it." *Id.* at 5.

## II.

Federal Rule of Civil Procedure 60(b) sets forth various grounds upon which a party may obtain relief from a judgment. Rule 60(b)(2) allows for relief based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." Fed. R. Civ. P. 60(b)(2). A district court considering a motion for relief from

judgment under Rule 60(b) must "strike a 'delicate balance between the sanctity of final judgments . . . and the incessant command of a court's conscience that justice be done in light of *all* the facts.'" *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (alteration in original) (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)) (some internal quotation marks omitted). The trial judge, "who is in the best position to discern and assess all the facts, is vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion." *Id.* We thus review the denial of a Rule 60(b)(2) motion for abuse of discretion, but we consider underlying legal issues de novo. *Marino v. Drug Enforcement Admin.*, 685 F.3d 1076, 1080 (D.C. Cir. 2012). Here, we disagree with the district court's first ground for denying Bain's Rule 60(b)(2) motion, but we affirm on the basis of the district court's second ground.

## A.

The district court first held that Bain's knowledge of Jackson's April 2008 letter at the time of trial precluded the grant of Rule 60(b)(2) relief. In the court's view, "'evidence cannot be newly discovered'" for purposes of Rule 60(b)(2) "'if it was known to the party at the time of trial.'" Mem. Op. at 4 (quoting *Lightfoot v. District of Columbia*, 555 F. Supp. 2d 61, 68 (D.D.C. 2008)). We disagree.

It is true that Bain "knew" of the letter at the time of trial in the sense that she then knew of its existence. In the view of MJJ and the district court, awareness of evidence during trial necessarily compels denying relief under Rule 60(b)(2), regardless of the evidence's availability at that time. Evidence known to a party at trial, MJJ argues, cannot qualify as "newly discovered" in a post-judgment motion. MJJ emphasizes one definition of "discover": "to obtain for the first time sight or knowledge of." Webster's Third New International Dictionary

647 (3d ed. 1986). "Discover," however, can also mean "to detect the presence of," *i.e.*, to "find," *id.*; or "to make known or visible," *i.e.*, to "expose," Merriam-Webster's Collegiate Dictionary 357 (11th ed. 2011); *see also* Webster's New International Dictionary 647 (2d ed. 1947) (similar definitions). Under those definitions, evidence that was lost, hidden, or unavailable during trial could qualify as "newly discovered evidence" when later found, even if the evidence was known to the movant at the time of trial.

We think that understanding better squares with the purpose and operation of Rule 60(b)(2) than one in which mere awareness of evidence would forever preclude its consideration as "newly discovered." If awareness of evidence alone were automatically to foreclose its treatment as "newly discovered," evidence known to a party could never form the basis of Rule 60(b)(2) relief even if it had been unavailable during trial or summary judgment proceedings due to circumstances entirely beyond the party's control. For instance, if critical documentary evidence were known to have existed at one time but had been presumed by all to have been destroyed in a natural disaster, a party would have no ability to seek relief from judgment even if the pivotal document were later discovered unexpectedly to have been moved before the disaster and to have survived in an unanticipated place. *See Serio v. Badger Mut. Ins. Co.*, 266 F.2d 418 (5th Cir. 1959). We perceive no basis for concluding that Rule 60(b)(2) categorically precludes the grant of relief in such situations, with no consideration given to the particular circumstances. Rather, Rule 60(b), while respecting "the sanctity of final judgments," allows that "justice be done in light of *all* the facts." *Twelve John Does*, 841 F.2d at 1138 (internal quotation marks omitted).

No decision of this Court suggests that mere awareness of evidence during trial, standing alone, categorically precludes later treating the evidence as "newly discovered" under Rule

60(b)(2). Nor, to our knowledge, has any other court of appeals so held. MJJ cites the observation of the First Circuit in one decision that, "[i]n order for evidence to be newly discovered, the party seeking a new trial must be unaware of the existence of the evidence before or during the trial." *Parrilla-Lopez v. United States*, 841 F.2d 16, 19 (1st Cir. 1988). In that case, however, the court did not rely on the movant's mere awareness of the evidence. The court instead explained that the movant knew of the evidence but chose not to "present[] [it] to the district court because of [his] conscious decision on trial strategy." *Id.* Evidence intentionally withheld, the court reasoned, "is not grounds for a new trial." *Id.* Whereas the First Circuit based its decision on a movant's tactical decision to withhold evidence accessible to him, here the district court held that a movant's awareness of evidence automatically precludes relief under Rule 60(b)(2), regardless of the evidence's availability. We find that to be an unduly constricted understanding of "newly discovered evidence" for purposes of Rule 60(b)(2).

**B.**

While awareness of evidence, standing alone, does not categorically preclude considering the evidence to be "newly discovered" under Rule 60(b)(2), a party's unannounced awareness of evidence can affect the assessment of whether it exercised the "reasonable diligence" contemplated by the Rule. Fed. R. Civ. P. 60(b)(2). The district court held that Bain "failed to exercise due diligence in seeking out the 2008 letter" because Bain knew of the letter's existence but made no mention of the letter in any submission to the court. Mem. Op. at 4-5. The district court did not abuse its discretion in so ruling.

According to Bain's recital of the relevant events, the "newly discovered" evidence at issue—the April 2008 letter—had been faxed by Jackson to Bain in April of that year. The copy of the

letter submitted by Bain thus bears facsimile time-stamps. The necessary implication is that at least one copy other than the one in Bain's possession had been in existence: the original letter. As Bain herself points out, that "original was presumably within the possession, custody or control of Mr. Jackson's Estate." And as Bain further observes, "[c]ounsel for [the Jackson Parties] should have had . . . a copy of this document in their possession since April, 2008." Bain Aff. ¶ 3. In such circumstances, even if the faxed copy was believed lost, missing, or destroyed, a party exercising reasonable diligence should have sought to obtain the original from the defendants, either by requesting the court's assistance or directly contacting the defendants. *See Yachts Am., Inc. v. United States*, 779 F.2d 656, 662 (Fed. Cir. 1985) (affirming denial of Rule 60(b)(2) motion based in part on movant's failure to seek an alternate copy of a document from the government, the adverse party).

Bain emphasizes her search of her own files to locate the letter. But while Bain's examination of her own files may bear on the assessment of reasonable diligence, it does not end the inquiry. Bain's efforts to find her own copy of the letter did not relieve her of all responsibility to undertake reasonable efforts to obtain the original letter (or a separate copy) from Jackson, his estate, or his counsel. And by failing to apprise the district court of the letter, Bain denied the court any opportunity to assist with locating it. *See Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1290 (10th Cir. 2005) (finding lack of due diligence because movant knew certain documentation was missing but "made no attempt to explicitly include it in the discovery process"); *Lans v. Gateway 2000, Inc.*, 110 F. Supp. 2d 1, 6 (D.D.C. 2000) (denying Rule 60(b)(2) relief because movant "should have notified the Court and the defendants as to [the evidence's] potential existence and requested time to locate it").

Bain contends that she adequately sought the district court's assistance by requesting the court to permit discovery about the

circumstances surrounding the Release, including the authenticity of Jackson's signature on the Release. But even if she framed the scope of her intended discovery with sufficient breadth to encompass Jackson's April 2008 letter, there is a material distinction between generally seeking discovery, on one hand, and specifically mentioning the letter, on the other. Under Rule 56(d), "a court *may* deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion *adequately explains* why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989) (second emphasis added). In making that determination, courts consider whether the movant offers "specific reasons demonstrating the necessity and utility of discovery to enable her to fend off summary judgment." *Id*. In our view, a reasonably diligent party seeking to oppose summary judgment and convince a court to permit additional discovery would ordinarily mention specific evidence it seeks that would support its position. That is especially the case concerning evidence a party considers to be as pivotal as Bain contends is the case with Jackson's April 2008 letter. Had she alerted the court to the existence of the letter, she would have materially strengthened her case in opposition to the grant of summary judgment and in favor of an opportunity to conduct discovery.

Bain, however, ultimately offers no justification for her failure to mention the 2008 letter to the district court, to seek the court's assistance in locating a copy, or to ask the defendants for any copy in their possession. Nor does she suggest that any such efforts to locate the letter could not have borne fruit. *See In re Hope 7 Monroe St. Ltd. P'ship*, 743 F.3d 867, 873-74 (D.C. Cir. 2014). In those circumstances, the district court did not abuse its discretion in finding that Bain failed to exercise reasonable diligence.

The circumstances of this case are far afield from those in *Serio v. Badger Mutual Insurance Company*, on which Bain heavily relies. The Rule 60(b) motion in *Serio* concerned inventory records that had been inadvertently left outside a factory's fire-proof safe on the night the factory was destroyed by a fire. 266 F.2d at 419. Some months later, the factory owner discovered that an employee had moved the inventory records into a storage room outside of the factory a few days before the fire, where they had survived unscathed. *Id.* at 420. The Fifth Circuit rejected the argument that the owner's failure to search for the records amounted to a lack of due diligence. *Id.* at 420-21. In *Serio*, the inventory records were presumed to be destroyed, and there was no reason to suppose that there existed any additional copies. Here, by contrast, Bain's own copy of the letter was presumed to be missing rather than destroyed, and there was every reason to suppose that there existed at least one additional copy. The fact that Bain attempted to search her own files—whereas the owner in *Serio* evidently undertook no search—thus is of little assistance to her. The district court committed no abuse of discretion by looking beyond Bain's efforts in searching her own files and considering whether she mentioned the letter to the court or sought its assistance in locating the evidence.

\* \* \* \* \*

We affirm the district court's judgment denying relief under Rule 60(b)(2). Bain now, for the first time, also attempts to invoke alternative Rule 60(b) grounds for relief, alleging misconduct by the defense pursuant to Rule 60(b)(3) and error on the part of her prior counsel pursuant to Rule 60(b)(6). Because those arguments were not presented to the district court in the first instance, we decline to entertain them. *See Potter v. District of Columbia*, 558 F.3d 542, 550 (D.C. Cir. 2009) ("'It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal.'") (quoting

*District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984)).

*So ordered.*