*United States v. Forbes*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————

August Term, 2014

(Argued: December 11, 2014   Decided: June 23, 2015)

Docket No. 14-733

————

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

WALTER A. FORBES,

*Defendant-Appellant.*[*]

————

Before:

CABRANES, WESLEY, AND HALL, *Circuit Judges.*

————

---

[*] The Clerk of the Court is directed to amend the caption as above.

Appeal from the United States District Court for the District of Connecticut (Thompson, J.). Defendant-Appellant Walter A. Forbes appeals the district court's denial of his motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. Because Forbes does not proffer any evidence that constitutes "newly discovered evidence" within the meaning of Rule 33, we AFFIRM the decision of the district court.

_____

MASHA G. HANSFORD, Williams & Connolly LLP, Washington, D.C. (Robert M. Cary, Margaret A. Keeley, Williams & Connolly LLP, Washington, D.C.; Thomas J. Murphy, Cowdery, Ecker & Murphy, LLC, Hartford, CT, *on the brief*), *for Defendant-Appellant*.

MARK E. COYNE, Special Attorney, United States Department of Justice, Newark, NJ, *for Appellee*.

_____

WESLEY, *Circuit Judge*:

Walter A. Forbes appeals from a February 27, 2014 order of the United States District Court for the District of Connecticut (Thompson, J.) denying his motion for a new trial under Federal Rule of Criminal Procedure 33. Forbes, former chief executive officer and chairman of the board of directors at CUC International, Inc. ("CUC") and former chairman of CUC's successor, Cendant Corp. ("Cendant"), was convicted in 2006 after a jury trial of one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and two counts of making false statements in Securities and Exchange Commission ("SEC") filings, in violation of 15 U.S.C. § 78ff(a). This Court affirmed Forbes's

2

conviction and his petition for a writ of certiorari was denied. *United States v. Forbes*, 249 F. App'x 233, 236 (2d Cir. 2007) (summary order), *cert. denied*, 553 U.S. 1053 (2008). One day shy of three years after his conviction, Forbes filed a motion for a new trial under Federal Rule of Criminal Procedure 33 on the basis of "newly discovered evidence," namely the testimony of Stuart Bell, former CUC chief financial officer. Bell's testimony was unavailable at trial because he had invoked his Fifth Amendment privilege against self-incrimination. In his motion for a new trial, Forbes argued that the privilege was no longer in play—the statute of limitations for any accounting fraud charges had run—and, thus, Bell's testimony qualified as newly discovered evidence under the Rule.

The district court denied Forbes's motion for a new trial, concluding that (1) Forbes had not made a credible proffer that Bell's testimony was available, and (2) even if it were available, Bell's testimony did not constitute newly discovered evidence within the meaning of Rule 33, according to this Court's decision in *United States v. Owen*, 500 F.3d 83 (2d Cir. 2007). Because we agree that the reasoning in *Owen* is directly applicable to this case and, thus, that Bell's testimony does not constitute newly discovered evidence, we AFFIRM the order of the district court denying Forbes's Rule 33 motion.

# BACKGROUND

Forbes was tried three times on charges related to accounting fraud at CUC and Cendant, with the first two trials each resulting in a deadlocked jury. Following the third trial, on October 31, 2006, Forbes was convicted of one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and two counts of making false statements in SEC filings, in violation of 15 U.S.C. § 78ff(a). The trial court sentenced Forbes principally to 151 months in prison and ordered him to pay $3.275 billion in restitution. This Court affirmed Forbes's conviction on direct appeal and his petition for certiorari was denied. *Forbes*, 249 F. App'x at 236, *cert. denied*, 553 U.S. at 1053.

The Government's primary witness at trial was Cosmo Corigliano, who took the reins as CFO at CUC in 1995. It is undisputed that accounting fraud took place during Corigliano's tenure. He testified pursuant to a plea agreement[1] that Forbes and Bell, Corigliano's predecessor as CFO at CUC, initiated the

---

[1] Corigliano pleaded guilty to (1) conspiracy to commit mail and wire fraud and to file false statements with the SEC, in violation of 18 U.S.C. § 371; and (2) wire fraud, in violation of 18 U.S.C. § 1343. In exchange, the Government agreed not to initiate any further charges against him with regard to the accounting fraud at CUC and Cendant and, as long as Corigliano complied with the agreement and provided substantial assistance in the investigation or prosecution of another person (likely Forbes), the Government agreed to file a motion with the sentencing judge requesting a downward departure from the applicable guideline range.

accounting fraud and that Corigliano merely carried it out after Bell's departure because "[i]t was impractical to correct it or stop it" at that point because "the company would not have been able to hit the numbers that the investment community was expecting." J.A. 37. Corigliano further testified that Bell directed him to commit the accounting fraud and gave him instructions on how to do so.

Bell did not give any material testimony at any of Forbes's trials—he was called as a witness for the defense at the third trial but invoked his Fifth Amendment privilege for every question asked of him. During the first trial, Forbes's counsel submitted declarations stating that Bell's counsel had informed them that, if granted immunity, Bell would testify that he did not commit any fraud at CUC, that Corigliano's testimony about Bell's involvement was inaccurate, and that there were legitimate explanations for the accounting done during Bell's tenure as CFO. The Government declined to immunize Bell and the trial court denied Forbes's motion to compel the Government to grant Bell immunity in order to overcome his anticipated assertion of privilege.[2]

---

[2] In the first trial, a juror sent two notes asking, "Is Stu Bell alive?" and "Why are we not hearing from Stu Bell?" J.A. 11–12.

According to Forbes, the statute of limitations on claims against Bell with regard to the accounting fraud ran in April 2008.  On October 30, 2009, Forbes moved for a new trial on the basis of newly discovered evidence pursuant to Federal Rule of Criminal Procedure 33.[3]  The "newly discovered evidence" that Forbes identified was the newly available testimony of Bell.  Forbes's motion relied on the aforementioned declarations of his attorneys from 2004 to support his argument that Bell would testify and that his testimony would exculpate Forbes.  The Government opposed the motion, arguing that Forbes had not satisfied any of the requirements for obtaining a new trial on the basis of newly discovered evidence.  Indeed, despite Forbes's efforts to contact Bell through his counsel, Bell declined to provide an affidavit in support of Forbes's Rule 33 motion.[4]

---

[3] Rule 33(a) states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  While a defendant has 3 years in which to file a motion for "a new trial grounded on newly discovered evidence," a motion for a new trial on any other basis "must be filed within 14 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b).

[4] Forbes had also sought to present Bell's testimony at an evidentiary hearing or to depose him in connection with Forbes's also-pending petition for habeas corpus, pursuant to 28 U.S.C. § 2255, which he brought on similar grounds to those asserted in his Rule 33 motion.  In his reply brief in support of his Rule 33 motion, Forbes again sought leave to depose Bell.

The district court denied Forbes's Rule 33 motion without a hearing or granting leave to conduct a deposition.[5] The district court found that Forbes had "not demonstrated that Bell's testimony is 'newly available', because he has not made a credible proffer that it is available at all." *United States v. Forbes*, No. 3:02cr264(AWT), slip op. at 3–4 (D. Conn. Feb. 27, 2014). The court further held that "even if Bell's testimony were newly available," this Court's decision in *Owen*, made clear that "Forbes is not seeking to proffer any evidence that falls within the definition of 'newly discovered' evidence." *Id*. (citing 500 F.3d at 88). Forbes timely appealed.[6]

## DISCUSSION

### A. Standard

We review for abuse of discretion a district court's denial of a Rule 33 motion for a new trial. *See United States v. Sessa*, 711 F.3d 316, 321 (2d Cir.), *cert, denied*, 134 S. Ct. 353 (2013). "A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application

---

[5] The court also denied Forbes's § 2255 petition. S*ee Forbes v. United States*, No. 3:09CV806(AWT), 2014 WL 799002 (D. Conn. Feb. 27, 2014).

[6] Forbes separately petitioned this Court for a certificate of appealability to challenge the denial of his § 2255 petition. That petition was denied by a different panel of this Court. *See Forbes v. United States*, No. 14-777, Dkt. 62 (2d Cir. July 10, 2014) (Pooler, Lohier, Carney, Judges).

of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) (footnotes omitted).

Relief under Rule 33 based on newly discovered evidence may be granted only upon a showing that "(1) the evidence [was] newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal." *Owen*, 500 F.3d at 88 (citing decisions from the Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits).

## B. "Newly Discovered" as a Matter of Law

Relying on our decision in *Owen*, the district court denied Forbes's motion for a new trial on the basis of his failure to satisfy the first element of the standard, finding that Bell's testimony was not newly discovered after trial. In *Owen*, Edgar Owen and two codefendants, Paul Samuels and Mark Baroody, were charged with various crimes in connection with a marijuana distribution

8

conspiracy. 500 F.3d at 84. At their joint trial, each defendant exercised his right not to testify and the jury convicted all three defendants on all counts. *Id*. at 86. At Samuels's sentencing hearing, he stated that Owens "didn't have anything to do with" the crimes in question. *Id*. at 86–87. The district court granted Owen's motion for a new trial pursuant to Rule 33, reasoning that because Owen could not have forced Samuels to relinquish his Fifth Amendment privilege during the trial, the post-trial testimony constituted newly discovered evidence. *Id*. at 87.

This Court reversed, holding that Samuels's testimony was not newly discovered within the meaning of Rule 33. We noted that nearly every Circuit to address the issue had concluded that when a defendant is "aware that his codefendant could provide exculpatory testimony but is unable to obtain that testimony because the codefendant invokes his privilege against self-incrimination prior to and during trial, the codefendant's postconviction statement exculpating the defendant is not 'newly discovered evidence' within the meaning of Rule 33." *Id*. at 88. We thus "join[ed] the majority of circuits to have addressed the issue" and held that "Rule 33 does not authorize district courts to grant new trials on the basis of such evidence since it is not newly discovered, but merely newly available." *Id*. at 89.

The basis for our decision in *Owen* was the plain text of Rule 33. We explained that "[o]ur holding that previously known, but newly available, evidence is not newly discovered within the meaning of Rule 33 is rooted in the plain meaning of the Rule's text." *Id*. at 90. We focused in particular on the phrase "newly discovered" and stated that "[o]ne does not 'discover' evidence after trial that one was *aware of* prior to trial." *Id*. at 89–90.

Forbes encourages us to read *Owen* narrowly, to exclude from the reach of Rule 33 only "a narrow category of co-defendant testimony," Appellant Br. 15, given by "'a co-defendant, since convicted,'" *id*. at 15–16 (quoting *United States v. Jacobs*, 475 F.2d 270, 286 n.33 (2d Cir. 1973)). The Government, on the other hand, reads *Owen* to encompass *any* evidence that was known to the defendant before or during trial, but was unavailable, and that becomes newly available after trial.

To support his narrow reading of *Owen*, Forbes relies on a recent decision in the D.C. Circuit, *Bain v. MJJ Productions, Inc.*, 751 F.3d 642 (D.C. Cir. 2014). Forbes asserts that *Bain* limits the meaning of "newly discovered evidence" to the view that he now presses here. We agree that *Bain* adds to our understanding of the Rule and its application here, but, unlike Forbes, we do not believe that it is inconsistent with our decision in *Owen*.

10

*Bain* is set in the context of Federal Rule of Civil Procedure 60(b)(2), which provides that a party may be granted relief from a final decision of the court on the basis of "newly discovered evidence," Fed. R. Civ. P. 60(b)(2), and thus also required interpreting that phrase. The D.C. Circuit rejected a view that would make "mere awareness of evidence during trial, *standing alone*, categorically preclude[] later treating the evidence as 'newly discovered.'" 751 F.3d at 647 (emphasis added). It noted that such a reading would prohibit the grant of a new trial where, for example, "critical documentary evidence were known to have existed at one time but had been presumed by all to have been destroyed in a natural disaster . . . even if the pivotal document were later discovered unexpectedly to have been moved before the disaster and to have survived in an unanticipated place." *Id*. We would also reject such a reading; a "lost" document that is found after trial is newly discovered evidence since, surely a document considered "lost" at trial time means it could not have been introduced at trial, and the reason for its unavailability is neither the fault of its proponent, nor attributable to a privilege or legal impediment. A later discovery of the document (presuming that its discovery is the result of due diligence) is new in the sense that the document's existence is newly discovered and is

11

available to its proponent for use at a new trial. We do not think *Owen* should be read to give "newly discovered" such a narrow meaning that it would be seen to dictate a different result in the Second Circuit.

The Supreme Court has recognized that Rule 33 affords a defendant more time in which to file a motion for a new trial based on newly discovered evidence than is permitted for a motion for a new trial on any other basis in order to "afford relief where despite the fair conduct of the trial, it later clearly appears to the trial judge that because of facts unknown at the time of trial, substantial justice was not done." *United States v. Johnson*, 327 U.S. 106, 112 (1946); *see also* Fed. R. Crim. P. 33(b). But the Court also recognized that "this privilege might lend itself for use as a method of delaying enforcement of just sentences." *Johnson*, 327 U.S. at 112. It is the need to strike this balance—between the "[d]etermination of guilt or innocence as a result of a *fair* trial, and prompt enforcement of sentences in the event of conviction," *id*. (emphasis added)—of which our definition of "newly discovered" must take account.

Accordingly, we hold that evidence is excluded from the meaning of "newly discovered" under Rule 33 where (1) the defendant was aware of the evidence before or during trial, *and* (2) there was a *legal* basis for the

12

unavailability of the evidence at trial, such as the assertion of a valid privilege.

This second requirement reflects the delicate balance between protecting the

finality of judgments and the "interest of justice" that Rule 33 seeks to protect,

and it is consistent with our decision in *Owen*. *See* 500 F.3d at 89; Fed. R. Crim. P.

33(a) ("Upon the defendant's motion, the court may vacate any judgment and

grant a new trial *if the interest of justice so requires.*") (emphasis added).  Indeed,

though the text of the Rule was our primary focus in *Owen*, we considered not

only whether the defendant was aware of the evidence prior to trial, but also the

reason that the evidence was not available at trial.  We noted that "Owen was at

all times aware of Samuels'[s] ability to exculpate him, but was unable to benefit

from Samuels'[s] testimony because Samuels did not make it available until after

the trial was over" because he invoked a valid privilege.  500 F.3d at 91 (internal

quotation marks omitted).  "*In these circumstances*, Samuels'[s] testimony is not

newly discovered evidence within the meaning of Rule 33."  *Id*. (emphasis

added).

The balance between protecting the finality of judgments and the interests

of justice is inherent in the Rule 33 analysis.  We have long held that in order to

constitute newly discovered evidence, not only must the defendant show that the

evidence was discovered after trial, but he must also demonstrate that the evidence "could not with due diligence have been discovered before or during trial." *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir. 1980). Thus, if the reason that testimonial evidence was unavailable at trial was the defendant's failure to call a witness that he knew could provide exculpatory testimony, a new trial on the basis of newly discovered evidence would not be warranted. *See, e.g., Brown v. United States*, 333 F.2d 723, 724 (2d Cir. 1964) (per curiam). The failure to exercise due diligence does not provide a *legal* basis for the unavailability of evidence.

Furthermore, it is the reason that the evidence was unavailable at trial that distinguishes the situation in *Owen* from one where, for example, a defendant on trial for a murder that he did not commit is *aware* that Witness X saw someone else pull the trigger, but cannot locate Witness X to testify to that fact at trial. The unavailability of Witness X is not law based: it is not the product of a fundamental constitutional right, but rather a matter of circumstance. If the defendant is later able to locate Witness X, provided that the other requirements for Rule 33 are satisfied, his testimony would be newly discovered within the meaning of Rule 33.

Here, as in *Owen*, the alleged newly discovered evidence is the testimony of a witness who had invoked his Fifth Amendment privilege at trial. Forbes, like Owen, had to be aware of the exculpatory nature of Bell's testimony before and during trial. Indeed, the proffers by Forbes's attorneys—submitted to the court during Forbes's first trial in connection with his motion to compel the Government to grant immunity to Bell—state that, if given immunity, Bell would testify that he did not commit any fraud or financial wrongdoing at CUC, that Corigliano's testimony about Bell was inaccurate, and that there were "legitimate explanations for the accounting done at CUC" while Bell was CFO. J.A. 13, 14. Thus, the record is clear that Forbes was aware of the evidence before and during trial.

And here, as in *Owen*, the evidence was unavailable as a result of the invocation of the witness's Fifth Amendment privilege. In *Owen*, Samuels invoked his Fifth Amendment privilege during trial. We held that Samuels's subsequent post-trial waiver of this privilege did not make his testimony "newly discovered" within the meaning of Rule 33. Here, Bell also invoked his Fifth Amendment privilege at Forbes's trial. The statute of limitations as to any crimes allegedly committed by Bell has now run, however, which means that his

15

privilege against self-incrimination has also been effectively "waived."  But just as in *Owen*, that waiver merely makes Bell's testimony "newly available"—it does not make Bell's testimony "newly discovered" within the meaning of Rule 33.

Where, as here, a defendant is aware that a coconspirator could provide exculpatory testimony, but the coconspirator refuses to do so on the basis of his Fifth Amendment privilege, that testimony—made available post-conviction by the expiration of the statute of limitations as to that co-conspirator's alleged offenses—is not newly discovered after trial and, therefore, does not constitute newly discovered evidence within the meaning of Rule 33.

We are not convinced by Forbes's attempts to distinguish this case from *Owen*; indeed, the factual similarities of the two cases alone suggest that the same rule should apply.  In both cases, the reason the testimony was not available at trial was because of the witness's invocation of a valid Fifth Amendment privilege; and, in both, the testimony's availability post-trial can be attributed to the absence of that privilege.  In our view, it is irrelevant how the impediment of the privilege was removed, whether by the defendant's waiver of the privilege or by the mere passage of time; neither has anything to do with whether the

16

evidence was newly discovered after trial. And while *Owen* involved the testimony of a codefendant, and this case involves the testimony of an alleged coconspirator, this is of no import: we have already affirmed the application of *Owen* in the context of a coconspirator. *See, e.g.*, *United States v. Muja*, 365 F. App'x 245, 246 (2d Cir. 2010) (summary order).

In a further attempt to avoid the consequences of our decision in *Owen*, Forbes argues that the *Owen* "holding arose in the context of a specific problem, recognized by a number of courts of appeal: gamesmanship of the Rule 33 safeguard by 'a co-defendant, since convicted.'" Appellant Br. 15–16 (quoting *Jacobs*, 475 F.2d at 286 n.33). He identifies the concern motivating our decision as the risk of a codefendant's strategic invocation of his privilege at trial but, after conviction and with little to lose, his change of heart to then offer testimony to exculpate his comrade. "Such 'aid' from a co-defendant can arise in virtually any case with more than one individual charged," Forbes warns, and "convicted co-defendants, who have shown a disregard for the law, are far more likely than ordinary citizens to commit perjury to help a confederate." Appellant Br. 16. He claims that those same practical concerns do not exist here.

Forbes's argument is unpersuasive. He claims that post-conviction testimony offered by a convicted codefendant is uniquely "rife for manipulation" and "raises the risk of encouraging perjury." Appellant Br. 7. The same risks are present here. Forbes's entire motion is predicated on the idea that Bell is no longer prosecutable for any offense he arguably committed in connection with the relevant accounting fraud. Therefore, Bell would similarly have "little to lose" in devising a story that would exculpate Forbes.[7]

Of course, as we stated in *Owen*, when a witness "invokes his privilege against self-incrimination and refuses to testify, the defendant is denied the benefit of any potentially exculpatory testimony the [witness] might have provided. This is one consequence of the Fifth Amendment privilege." 500 F.3d at 91. Forbes's attempts to circumvent Bell's invocation of his Fifth Amendment privilege through a grant of immunity were for naught. Forbes's remaining option was "to take the stand and convey to the jury himself any facts—

---

[7] We reject Forbes's argument that Bell, an unindicted coconspirator who has never been to prison and would risk marring his otherwise clean record, is any more deterred from giving false testimony by the possibility of a perjury charge than a convicted codefendant who has been—or will be—sentenced to prison. For one thing, any witness—even one already convicted of a crime—would presumably be deterred from giving false testimony by the possibility of an additional criminal conviction for perjury and, potentially, a sentence of confinement. Additionally, if we assume that Bell in fact *did* commit accounting fraud, he would have a large incentive to lie about that fact in order to protect his reputation, even if he could no longer be criminally charged.

including dealings with [the privileged witness]—that would support a not guilty verdict." *Id.* at 92. Here, Forbes did just that, but his testimony—at least in the third trial—was insufficient to create a reasonable doubt in the minds of the jury.

Even if true, Forbes's assertion that Bell's testimony would have made a difference to the jury is irrelevant, because that testimony is not "newly discovered" within the meaning of Rule 33. Where, as here, a defendant knew that a witness could offer testimony as to the defendant's role in the charged crime, his inability to procure that testimony before or during trial because of the witness's invocation of his Fifth Amendment privilege cannot be redressed by granting the defendant a new trial simply because the testimony later becomes available as a result of the mere passage of time.

## C. Denial of Rule 33 Motion Without a Hearing

Forbes also argues that the district court should have at least permitted an evidentiary hearing to allow him to develop the factual record before denying his Rule 33 motion. We review a district court's denial of a post-trial Rule 33 hearing or discovery for abuse of discretion. *See United States v. Stewart*, 433 F.3d 273, 305–06 (2d Cir. 2006). Given the above discussion, concluding that Bell's

testimony is not newly discovered as a matter of law, we need not engage in the inquiry whether the district court erred in failing to conduct an evidentiary hearing. Regardless of how many hearings the district court holds, or any exculpatory evidence that could be gleaned from a deposition of Bell, the evidence would not be "newly discovered" within the meaning of Rule 33. Accordingly, the district court did not abuse its discretion in denying the Rule 33 motion without a hearing.

## CONCLUSION

Despite a valiant effort by his able counsel, Forbes's appeal must fail. Because Bell's testimony was not "newly discovered" evidence within the meaning of Rule 33, the district court did not abuse its discretion in denying Forbes's motion for a new trial. Accordingly, we AFFIRM the decision of the district court.