22-1559-cr
*United States v. Chavez*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of November, two thousand twenty-three.

PRESENT:
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> EUNICE C. LEE,
> > *Circuit Judges*.

---

United States of America,

> *Appellee*,

> v.                                                          22-1559-cr

Andrew Duron, AKA Chavo, Jessie Rosales,
AKA Alex, Angel Ramirez, Christopher Chavez,
Tyshawn Welborn, AKA Black, AKA Blacks,
Todd Vernon, Arturo Hernandez, AKA Tury,

> *Defendants*,

Raul Chavez, AKA Sonny,

> *Defendant-Appellant*.

---

FOR APPELLEE: BRIAN P. LEAMING, (Reed Durham, Sandra Glover *on the brief*) Assistant United States Attorney, *for* Vanessa Roberts Avery, United States Attorney for the District of Connecticut.

FOR DEFENDANT-APPELLANT: CHRISTOPHER DUBY, Hamden, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Meyer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Raul Chavez appeals from the district court's judgment, entered on July 15, 2022, following a six-day jury trial. Chavez was convicted of conspiring to distribute and to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii). On March 18, 2022, Chavez moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) or, in the alternative, for a new trial under Federal Rule of Criminal Procedure 33. The district court denied Chavez's post-trial motions and sentenced him principally to 168 months' imprisonment and five years of supervised release.

On appeal, Chavez challenges the denial of his post-trial motions. First, he contends that the district court erred when it denied his Rule 29 motion for judgment of acquittal because the evidence at trial was insufficient to show that he was a member of the charged conspiracy. Alternatively, Chavez argues that the district court erred when it denied his Rule 33 motion for a new trial because the court improperly admitted co-conspirator statements at trial and the government engaged in prosecutorial misconduct during its rebuttal summation.

2

We assume the parties' familiarity with the underlying facts, the procedural history, and arguments on appeal, which we reference only as necessary to explain our decision to affirm.

## I.     The Sufficiency of the Evidence

Chavez asserts that the evidence adduced at trial was insufficient to convict him of the charged cocaine distribution conspiracy. "We review *de novo* a district court's order denying a Rule 29 motion addressing the sufficiency of the evidence." *United States v. Klein*, 913 F.3d 73, 78 (2d Cir. 2019) (citing *United States v. Khalil*, 857 F.3d 137, 139 (2d Cir. 2017)). In doing so, "we apply the same deferential standard as the district court in assessing the trial evidence, *i.e.*, we view that evidence in the light most favorable to the government, assuming that the jury resolved all questions of witness credibility and competing inferences in favor of the prosecution[.]" *United States v. Abu-Jihaad*, 630 F.3d 102, 134 (2d Cir. 2010). Thus, a defendant challenging the sufficiency of the evidence "bears a heavy burden" because we must uphold the conviction "if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

"To affirm a conviction for conspiracy to distribute under [21 U.S.C. §] 846, the record must support a rational jury's finding (1) the existence of the conspiracy charged; (2) that the defendant had knowledge of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Barret*, 848 F.3d 524, 534 (2d Cir. 2017) (internal quotation marks and citation omitted). Chavez argues that there was insufficient evidence to establish that he was a member of the conspiracy because the government's witnesses did not provide testimony on how Chavez oversaw the cocaine distribution, what he oversaw, or when he did so. Moreover, Chavez

3

argues that the planned drug transaction, on August 23, 2014, in a parking lot in Windsor, Connecticut, involved "a separate and distinct conspiracy" and that "[a]ll that the [g]overnment was able to prove was that [he] was present in the [] parking lot on [that date]." Appellant's Br. at 15, 17. We disagree. As summarized below, during the trial, three of Chavez's co-conspirators— Jessie Rosales, Tyshawn Welborn, and Chavez's son Christopher Chavez ("Chistopher")— provided detailed testimony regarding Chavez's years-long involvement in a Connecticut-based cocaine distribution operation, as well as his knowing participation in the planned August 2014 drug transaction involving an undercover Drug Enforcement Administration (DEA) agent acting as the purported supplier of 25 kilograms of cocaine. After one of Chavez's co-conspirators displayed the money for the drug transaction in the parking lot on August 23 (the "money flash"), Chavez and several co-conspirators were arrested by the DEA.

The jury heard testimony from Rosales regarding the progression of his long-standing involvement with Chavez in the distribution of illegal drugs. Rosales testified that he first began shipping marijuana to Chicago from El Paso for Chavez in the early 2000s. Around 2002, Chavez approached Rosales asking him to begin shipping cocaine to Connecticut. Rosales testified that, as part of that operation, Chavez would supply the cocaine in El Paso, and Rosales would then package the cocaine and coordinate the transport to Connecticut. A typical shipment to Connecticut would involve approximately forty kilograms of cocaine. At some point, Chavez requested that Rosales move to Connecticut to oversee the drug operation and, after Rosales did so, the cocaine distribution with Chavez continued. Additionally, Rosales described in detail the planned August 2014 drug transaction and money flash. Rosales testified that he first traveled to El Paso to prepare a separate cocaine shipment at Chavez's request, loaded the cocaine into the

4

trailer with Christopher, drove the truck to his driver, and then returned to Connecticut with Chavez. On August 22, 2014, after Rosales and Chavez returned to Connecticut, they met with Welborn to discuss Welborn's capacity to increase the amount of cocaine he could purchase and distribute. After this conversation, Welborn agreed to purchase larger quantities of cocaine and provide a large amount of money up front for a potential new cocaine source. The next day, at Chavez's request, Rosales collected money from Welborn, substituted smaller bills for larger ones to make it look more substantial, and drove the money to a parking lot so they could show the money to the person who they believed was a new cocaine source.[1]

The jury also heard from Welborn, who testified that he contacted Chavez in 2010 to discuss his interest in acquiring cocaine. According to Welborn, he regularly acquired increasing quantities of cocaine from Chavez and Rosales of up to ten kilograms per delivery. Welborn testified that the day prior to the money flash, he had a conversation with Chavez and Rosales in which Chavez told him that he had a new cocaine source who could supply Welborn with cocaine in Connecticut, and that Welborn needed to provide currency up front. Welborn agreed, and the next day Rosales came to his home and collected the money. Welborn testified that he expected to receive cocaine in return for the funds.

Chavez's son Christopher testified that, on multiple occasions over a nine-year period, he brought shipments containing twenty-five to thirty kilograms of cocaine to an El Paso warehouse and helped Rosales load the cocaine into a truck. Christopher testified that Chavez oversaw the operation and communicated with people in Mexico regarding deliveries of the cocaine in El Paso.

---

[1] Unbeknownst to the co-conspirators, this "new cocaine source" was actually a DEA confidential source.

Christopher also corroborated Rosales's testimony regarding the preparation of a cocaine shipment in Texas in August 2014, which occurred prior to Chavez and Rosales returning to Connecticut where they participated in the money flash in the parking lot in a separate transaction with the undercover DEA agent. In particular, Christopher testified that he picked up the cocaine from a parked car in Texas, transported it to a warehouse to help Rosales load it into a truck, and then reported to Chavez when his task was completed.

Although Chavez contends that the evidence is insufficient because the government did not corroborate the testimony of the cooperating witnesses with any recorded admissions from Chavez, we find this argument unpersuasive. As a threshold matter, in addition to the testimony from Chavez's three co-conspirators, the government provided circumstantial evidence, including phone records, cell-site records, and physical and electronic surveillance, that corroborated the witnesses' testimony. In any event, "a conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Diaz*, 176 F.3d 52, 92 (2d Cir. 1999) (alteration adopted) (internal quotation marks and citation omitted). "Any lack of corroboration . . . goes merely to the weight of the evidence, not to its sufficiency, and a challenge to the weight is a matter for argument to the jury, not a ground for reversal on appeal." *Id.* (alteration adopted) (internal quotation marks and citation omitted); *see also United States v. Riggi*, 541 F.3d 94, 108 (2d Cir. 2008) (explaining that, when reviewing the sufficiency of the evidence, "[a]ll issues of credibility, including the credibility of a cooperating witness, must be resolved in favor of the jury's verdict").

6

In sum, the trial evidence, when "view[ed] . . . in the light most favorable to the [g]overnment[,]" *United States v. Requena*, 980 F.3d 30, 43 (2d Cir. 2020), was sufficient to sustain Chavez's cocaine conspiracy conviction.

## II.     Admission of Out-of-Court Statements by Co-Conspirators

Chavez argues that the district court erred in denying his new trial motion because hearsay statements made by his co-conspirators were improperly admitted under Federal Rule of Evidence 801(d)(2)(E).

To admit a statement made by a co-conspirator under Rule 801(d)(2)(E), the district court must find "by a preponderance of the evidence (a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Coppola*, 671 F.3d 220, 246 (2d Cir. 2012) (internal quotation marks and citation omitted); *see also* Fed. R. Evid. 801(d)(2)(E). "In determining whether a conspiracy existed, the district court may consider the hearsay statement itself, but there must be some independent corroborating evidence of the defendant's participation in the conspiracy." *United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001) (internal quotation marks and citation omitted). We review a district court's factual findings regarding the conspiracy for clear error and its decision to admit co-conspirator statements for abuse of discretion. *See United States v. Gupta*, 747 F.3d 111, 124 (2d Cir. 2014).

Chavez does not identify which statements were improperly admitted. Instead, his argument regarding his co-conspirators' statements amounts to a generalized attack on the sufficiency of the government's evidence to establish that he was a member of a drug trafficking

7

conspiracy.  As summarized above, there was more than sufficient evidence, independent of any co-conspirator hearsay statements, for the district court to find by a preponderance of the evidence that Chavez was a knowing member of the charged conspiracy to distribute cocaine, including the direct dealings that the three accomplices had with Chavez, and that these co-conspirator statements were in furtherance of that conspiracy.  Accordingly, the district court did not err in admitting the hearsay statements made by Chavez's co-conspirators under Rule 802(d)(2)(E).

### III. Rebuttal Summation

Chavez also contends that he should be granted a new trial in light of alleged prosecutorial misconduct during the government's rebuttal summation.  Specifically, Chavez asserts that the prosecutor improperly stated several times during the rebuttal that he was incarcerated after the August drug transaction.

"[A] defendant who seeks to overturn his conviction based on alleged prosecutorial misconduct in summation bears a 'heavy burden.'"  *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (quoting *United States v. Feliciano*, 223 F.3d 102, 123 (2d Cir. 2000)).  "Flaws in the government's summation will require a new trial only in the rare case in which improper statements—viewed against the entire argument to the jury—can be said to have deprived the defendant of a fair trial."  *United States v. Caracappa*, 614 F.3d 30, 41 (2d Cir. 2010); *accord Farhane*, 634 F.3d at 167 (noting that a defendant seeking a new trial based on alleged prosecutorial misconduct "must show that [a challenged] comment, when viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him, depriving him of a fair trial" (internal quotation marks and citations omitted)).  "In determining whether an inappropriate remark amounts to prejudicial error, we look

8

to 'the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct.'" *Caracappa*, 614 F.3d at 41 (quoting *United States v. Spinelli*, 551 F.3d 159, 170 (2d Cir. 2008)). We review the denial of a motion for a new trial based on prosecutorial misconduct for abuse of discretion. *See United States v. Forbes*, 790 F.3d 403, 406 (2d Cir. 2015).

Here, we conclude that the district court did not abuse its discretion in concluding that the prosecutor's reference in the rebuttal summation to Chavez's incarceration was proper because defense counsel opened the door to the admission of that fact as a result of his cross-examination of a government witness and his arguments in summation.

One of Chavez's central theories during the trial was that it was Rosales, not him, who orchestrated the cocaine distribution conspiracy. In support of that theory, defense counsel elicited testimony during cross-examination of a DEA task force officer that: (1) after Rosales was arrested on August 23, 2014, and then released, he continued to engage in cocaine distribution for the next six months before he was re-arrested; and (2) during that six-month period, there was no evidence of any communication between Chavez and Rosales. Defense counsel also elicited testimony to establish that no evidence of Chavez's involvement in the post-August 2014 timeframe had been uncovered as a result of various investigative activities that Rosales performed as a confidential source after his second arrest—including consensual phone calls and recorded meetings—nor was there evidence involving Chavez collected on a DEA wiretap of a co-conspirator during that timeframe.

The district court concluded, based upon defense counsel's cross-examination, that "the door ha[d] been basically kicked open on the fact that the reason why such communications didn't

9

occur was because Mr. Chavez was detained in prison" and thus it was "fair game for the government to bring that out on redirect examination." Government App'x at 394. Defense counsel did not object to that determination, and on redirect examination, the government elicited testimony from the witness that there were no proactive steps taken by the DEA to record any communication between Chavez and Rosales after August 23, 2014, because Chavez was incarcerated during that timeframe.

In his summation, consistent with the cross-examination, defense counsel outlined in detail the various investigative tools used to gather compelling evidence against other co-defendants and emphasized the lack of such efforts as to Chavez, and the resulting absence of a similar level of proof linking him to the conspiracy. *See, e.g.*, Government App'x at 943–44 ("Use of a confidential source . . . . an undercover agent . . . . consensual recordings . . . . in-person recordings . . . . Kel transmitters . . . . [w]iretaps . . . . GPS warrants. . . . All of these investigative tools were at the disposal of the DEA. And with Mr. Chavez, they used none of them. If Mr. Chavez was really involved in this, why didn't they use some of these techniques?"); *see also id*. at 948 ("Consensual calls. The wiretap. All available tools. None of them used with regard to Mr. Chavez."). In the rebuttal summation, the prosecutor responded to this argument, without objection, by explaining that no proactive efforts were made to gather evidence against Chavez after August 23, 2014 because he was incarcerated after his arrest.

It is well settled that "where the defense summation makes arguments and allegations against the government, the prosecutor may respond to them in rebuttal." *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998); *see United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992) (noting that "defense argument may, in a proper case, 'open the door' to otherwise inadmissible

10

prosecution rebuttal"); *United States v. Marrale*, 695 F.2d 658, 667 (2d Cir. 1982) ("[A] prosecutor is ordinarily entitled to respond to the evidence, issues, and hypotheses propounded by the defense[.]"). In denying Chavez's post-trial motion, the district court explained:

> For tactical reasons, defendant's trial counsel opened the door to the issue of defendant's imprisonment following his arrest. Defendant's counsel repeatedly tried to fault the quality of the Government's evidence against the defendant both before and after the date of the arrest by comparing it to the type of evidence such as inculpatory statements and recordings that the Government had obtained against the defendant's co-conspirators. . . . In response, it was entirely proper for the Government both at trial and in closing argument to explain how the defendant's continuing imprisonment limited its ability to gather incriminating statements from the defendant following his arrest.

App'x at 82. Given the trial testimony regarding Chavez's incarceration after his arrest (to which no objection was made) and its probative value in rebutting Chavez's extensive argument in summation regarding the DEA's failure to gather evidence against him, we discern no abuse of discretion in the district court's determination that the references to Chavez's incarceration in the prosecutor's rebuttal summation were proper.

*           *           *

We have considered Chavez's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11