*United States v. Joseph*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of April, two thousand twenty-four.

PRESENT:
> **DENNIS JACOBS,**
> **MICHAEL H. PARK,**
> **ALISON J. NATHAN,**
> *Circuit Judges.*

_____

**United States of America,**

> *Appellee,*

> v.                                          22-1552

**Nicholas Joseph,**

> *Defendant-Appellant.*

_____

| | |
|---|---|
| **FOR APPELLEE:** | ANDREW K. CHAN (Emily A. Johnson and Danielle R. Sasson, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY. |
| **FOR APPELLANT:** | RANDA D. MAHER, Great Neck, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Castel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Nicholas Joseph was a member of a violent street gang based in the Bronx called the Castle Hill Crew ("CHC"). The CHC engages in acts of violence against rival gang members, including members of a gang called the Monroe Houses Crew ("MHC"). Joseph was tried and convicted on five counts for his involvement in gang violence, including a shooting that occurred on April 28, 2017 (the "April Shooting"), and gun possession: Count One for participating in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d); Count Two for assault with a dangerous weapon and attempted murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(3), (a)(5), (a)(6), and 2; Count Three for using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2; Count Four for being a felon in possession of a firearm and ammunition on or about July 10, 2020 in violation of 18 U.S.C. §§ 922(g)(1); and Count Five for being a felon in possession in or around November and December 2020 in violation of 18 U.S.C. §§ 922(g)(1).

Joseph filed a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 and a motion for a new trial under Rule 33. He argued that the district court should enter a judgment of acquittal for Counts Two and Three because the government failed to prove that the April Shooting was gang-related. He then argued, among other things, that he deserved a new trial because the district court failed to voir dire on implicit or unconscious racial bias in violation of his Sixth Amendment right to an impartial jury. The district court denied these motions,

finding "overwhelming evidence" in support of Counts Two and Three, and concluding that the court's voir dire questioning was proper. A1033. The day before sentencing, Joseph filed a second Rule 33 motion, claiming among other things that he was entitled to a new trial because Nasir Vincent, an MHC member targeted by Joseph at the April Shooting, was now willing to testify that Joseph did not shoot at him at the April Shooting. Vincent did not testify at trial because his counsel informed the district court that he planned to assert his Fifth Amendment privilege. The district court denied the motion because Vincent's identity and alleged role were known to the defense prior to trial; "the evidence [was] at most newly available but not newly discovered." A1151. Joseph was sentenced to 264 months of imprisonment.

Joseph now appeals, arguing that (1) the evidence was insufficient for conviction on Counts Two, Three, and Five; (2) the district court abused its discretion in the voir dire process by failing to include his proposed instructions on unconscious or implicit bias; and (3) the district court abused its discretion by failing to consider Vincent's newly available affidavit. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. Sufficiency of Evidence

### A. Standard of Review

We "review[] de novo a challenge to the sufficiency of evidence supporting a criminal conviction, and must affirm if the evidence, when viewed in its totality and in the light most favorable to the government, would permit any rational jury to find the essential elements of the crime beyond a reasonable doubt." *United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004) (citation omitted). "A defendant challenging the sufficiency of the evidence bears a heavy

3

burden." *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011). "We must credit every inference that the jury might have drawn in favor of the government because the task of choosing among competing, permissible inferences is for the [jury], not for the reviewing court." *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020) (citations and quotation marks omitted). "The jury may reach its verdict based upon inferences drawn from circumstantial evidence." *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (internal quotation marks omitted).

"In order to avoid usurping the role of the jury, courts must defer to the jury's assessment of witness credibility . . . when reviewing the sufficiency of the evidence." *United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 158-59 (2d Cir. 2008). "[A] conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilty beyond a reasonable doubt." *United States v. Duron*, No. 22-1559-cr, 2023 WL 8253056, at *2 (2d Cir. Nov. 29, 2023) (quoting *United States v. Diaz*, 176 F.3d 52, 92 (2d Cir. 1999)).

B.     Counts Two and Three

At trial, the government introduced the testimony of several witnesses. Angel Arroyo, a former MHC member and one of the government's cooperating witnesses, testified that in November 2015, he was stabbed multiple times by Joseph and another CHC member in retaliation for an earlier violent altercation between CHC and MHC members; that on April 27, 2017, Vincent shot at Joseph for invading MHC territory; and that the next day, Joseph shot at MHC members, including Vincent, in the Story Playground next to a public elementary school in retaliation for the shooting that occurred the day before. Joseph missed his target and instead shot and injured a 12-year-old boy.

The government introduced ShotSpotter (a gunshot detection software), surveillance video, and DNA evidence. ShotSpotter evidence showed three gunshots near Joseph's building around the time of the April Shooting, but no gunshots in the vicinity of the shooting that occurred the day before. Surveillance video showed Joseph, right before the April Shooting, running out of his building with gun in hand towards the Story Playground. The government's second cooperating witness and member of the CHC, Christopher Cruz, testified that after the April Shooting, CHC members bragged about how Joseph had "put in work" for the CHC, and that Joseph gained status and "became somebody." The government also provided evidence from social media, rap videos, and the contents of Joseph's cellphone in which he bragged about "spinning" or "beefing" with rival members.

Joseph argues that the evidence did not sufficiently establish that his purpose in discharging his gun at the April Shooting was to maintain or increase his position in the CHC as required for conviction on Counts Two and Three.[1] "We consistently have construed the 'maintaining or increasing position' language in § 1959 . . . liberally. This element is satisfied if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *United States v. White*, 7 F.4th 90, 101 (2d Cir. 2021) (quotation marks omitted). The government is not required to prove that Joseph's "sole or principal motive was maintaining

[1] "Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or *maintaining or increasing position* in an enterprise engaged in racketeering activity" commits a crime of violence, shall be punished. 18 U.S.C. § 1959(a) (emphasis added).

or increasing his position, so long as it prove[s] that enhancement of status was among his purposes." *United States v. Farmer*, 583 F.3d 131, 143-44 (2d Cir. 2009) (cleaned up).

There was ample evidence, in the form of cooperator testimony and social media, rap videos, and content in Joseph's cellphone, of the long-standing acts of violence and retribution between the CHC and the MHC, from which the jury could find that one of Joseph's purposes in committing the shooting was to increase or maintain his status in the CHC. Cruz's testimony showed Joseph's status in the CHC did in fact increase as a result of the shooting. The jury acted well within its discretion to assess the credibility of witnesses, including Arroyo and Cruz, to make permissible inferences, and to weigh the evidence in reaching its conclusion. We affirm the district court's judgment convicting Joseph of committing violent crimes in aid of racketeering under Count Two and discharging a gun in furtherance of the violent crimes under Count Three.

C.     Count Five

On December 10, 2020, police recovered a loaded silver pistol with a white handle at a construction site in the vicinity of where Joseph was arrested and the path by which another CHC member, Malik James, was chased. DNA evidence indicated James likely contributed to the mixture of DNA found on the gun, but Joseph likely did not. Only hours before the arrest, Joseph sent text messages claiming he had a gun. Moreover, multiple videos found on Joseph's phone from November to December 2020 showed Joseph and James brandishing the same white and silver gun.

Joseph claims that the evidence was insufficient to prove Joseph possessed the gun. We disagree. The evidence was sufficient for the jury to conclude that Joseph possessed the gun in

and around November and December 2020, and at the very least constructively possessed[2] it on December 10, 2020. Given that Joseph and James were together at the time of Joseph's arrest, the jury made reasonable inferences based on evidence of James's DNA on the gun that James abandoned the gun at the construction site during the police chase and that Joseph at least shared possession of the gun. We affirm the district court's judgment convicting Joseph of being a felon in possession of a firearm under Count Five.

**II.     Voir Dire Instructions**

Joseph argues that the district court abused its discretion by not including instructions or questions on implicit bias in its voir dire. A district court has broad discretion in conducting voir dire, which we review for abuse of discretion. *See United States v. Nieves*, 58 F.4th 623, 632 (2d Cir. 2023). The "deferential standard applies to both the general manner in which [voir dire] has been conducted, and the specific questions a district court elects to ask, or not to ask." *Id*. "[W]e have never reversed a conviction for the failure to ask a particular question of prospective jurors." *Id*. at 626 (quoting *United States v. Bright*, No. 20-3792, 2022 WL 53621, at *1 (2d Cir. Jan. 6, 2022)). If a plaintiff fails to object to voir dire in the district court, we review for plain error instead of abuse of discretion. *United States v. Colabella*, 448 F.2d 1299, 1302-03 (2d Cir. 1971).

There is "no *per se* constitutional rule . . . requiring inquiry as to racial prejudice." *Rosales-Lopez v. United States*, 451 U.S. 182, 190 (1981). "Only when there are more substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in a particular case

---

[2] "Constructive possession exists when a person has the power and intention to exercise dominion and control over an object, and may be shown by direct or circumstantial evidence." *United States v. Facen*, 812 F.3d 280, 286–87 (2d Cir. 2016) (quotation marks omitted).

does the trial court's denial of a defendant's request to examine the jurors' ability to deal impartially with this subject amount to an unconstitutional abuse of discretion." *Id*.; *see also United States v. Diaz*, 854 F. App'x 386, 388 (2d Cir. 2021) (quoting *Rosales-Lopez*).

We review for plain error because Joseph did not object to the district court's voir dire. District courts retain broad discretion over how to screen jurors for bias. They can ask subtler or generalized questions about impartiality, or they can warn jurors of the general duty of impartiality, provided the juror has sufficient context about the case. *See Nieves*, 58 F.4th at 639. And even if the court doesn't ask any of these bias-related questions, the district court could ask "sufficiently detailed question[s] to allow [a] defendant[] to indirectly ferret out more subtle biases through *peremptory* challenges based on circumstantial indicators of bias." *Id*. (internal quotation marks omitted). The district court did all of the above. The district court did not commit error, much less plain error, by not including instructions or questions on implicit bias in its voir dire.

**III.    Newly Discovered Evidence**

Finally, Joseph argues that the district court erred by denying his Rule 33 motion for a new trial based on newly discovered evidence in the form of Vincent's testimony. Rule 33(a) provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A motion for a new trial may be brought on newly discovered evidence. *See* Fed. R. Crim. P. 33(b)(1). "We review the denial of a Rule 33 motion for a new trial for abuse of discretion." *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013). "To merit relief based on a claim of newly discovered evidence, the burden is on the defendant to satisfy five elements: (1) that the evidence is newly discovered after trial; (2) that facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) that the evidence is

8

material; (4) that the evidence is not merely cumulative or impeaching; and (5) that the evidence would likely result in an acquittal." *Id*. (quotation marks omitted).

"Evidence is not new if the defendant knew of it prior to trial, and is not considered newly discovered if, with the exercise of reasonable diligence, it could have been discovered before or during the trial." *United States v. Parse*, 789 F.3d 83, 109 (2d Cir. 2015). Moreover, "evidence is excluded from the meaning of 'newly discovered' under Rule 33 where . . . there was a *legal* basis for the unavailability of the evidence at trial, such as the assertion of a valid [Fifth Amendment] privilege." *United States v. Forbes*, 790 F.3d 403, 408 (2d Cir. 2015).

Vincent's testimony is not "newly discovered" under our precedent in *Forbes* and cannot be considered under Rule 33, as the testimony was known to Joseph and Vincent asserted his Fifth Amendment privilege as the basis for his unavailability. The district court thus acted well within its discretion to deny Joseph's motion for a new trial.

We have considered all of Joseph's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court